(115 N. W. 511.)

---

State of North Dakota, ex rel. T. F. McCue, Attorney General, and Herschel James, Relator, v. Alfred Blaisdell, as Secretary of the State of North Dakota.

Opinion filed October 29, 1908.

**Elections — Statutes — Legislature — Qualification of Members — Constitutional Provisions — Additional Test — Primary Election Law — Effect of Partial Invalidity.**

1. This is an application in the name of the state, by one Herschel James, as relator for an original writ to enjoin defendant, as secretary of state, from certifying to the various county auditors the names of the two republican candidates for the office of United States senator from this state, and to restrain him from placing upon the official ballot to be voted at such general election the names of said candidates. By such application the validity of chapter 109, page 151, Laws 1907, known as the "Primary Election Law," is challenged in so far as it relates to the nomination and election of a candidate for the office of United States Senator, which act, among other things,

provides that at the primary to be held in June prior to each general election, for the nomination of state, district and county officers, the electors of each political party may designate their choice, between the candidates of their party for United States Senator, and that, if no candidate receives 40 per cent of his party vote, the two candidates receiving the highest number of votes shall be placed on a separate ballot, under their proper party heading, to be voted on at the ensuing general election, and that the candidate receiving a majority of the votes cast shall be the nominee of his party for such office. Said act also provides that candidates for members of the legislature shall take and subscribe a certain oath, to the effect, among other things, that they are candidates for nomination to such office, and designating the political party with which they affiliate. And the act also provides that the petitions of all such candidates for members of the legislative assembly shall contain a pledge to the people that they will support and vote for that candidate of their party, for United States Senator, who has received a majority of such party votes for that position at the primary election, or at the succeeding general election. Relator contends that the provision of said act requiring legislative candidates to take and subscribe the oath therein prescribed, and the pledge aforesaid, violates section 211 of our state constitution, in that it adds another oath, declaration and test, as a qualification for office. *Held*, that such contention is correct, but, *held*, further, that those provisions of the act providing a method for permitting the electors to designate their choice of a candidate for the United States Senate are not dependent for their validity upon such other provisions requiring the oath and pledge, and may be sustained regardless of the invalidity of such other provisions.

### United States — Congress — Regulation of Election of Senators.

2. The provisions of said act, in so far as they permit the electors to designate their choice of a candidate for the office of United States Senator, are not vulnerable to attack upon any of the grounds urged by relator. The provisions of the act permitting the electors to designate their choice do not amount to an election by the people of a United States senator. Hence they do not contravene the provision of the federal constitution (section 3, article 1), providing for the election of United States senators by the state legislature; but, if they do violate such constitutional provision, relator is powerless to complain. No constitutional right of the citizen is thereby violated. It is not a judicial question; the senate of the United States being the tribunal to determine the same.

### Statutes — Expression of Subject in Title.

3. All the provisions of the act relating to the nomination and election of United States senators are germane to the subject embraced within the title of the act.

**Elections — Nomination by Primary Election — Ballots — United States Senator — Form.**

4. Certain provisions found in section 13 of the act (Laws 1907, page 157, chapter 109), relating to the ballots to be used at the general election for determining the choice between the candidates for the office of United States senator construed, and *held* to require that the candidate of each political party shall be placed on a ballot separate and apart from the candidates of other political parties. *Held,* further, that the general election, in so far as it relates to the choice between the candidates for the office of United States senator, is a mere continuation of the primary election, and that the provisions of chapter 109 aforesaid, which are designed to safeguard the rights of party organization, and to prevent members of one party from participating in the nominations by another party, apply. Hence, the provisions of the law, requiring judges and inspectors, when handing a ballot to a voter, to inform him that he must vote for the candidate of the political party such ballot represents only, and the voter shall call for his party ballot only, and the provisions making it unlawful to call for or vote a ballot not representing the party or principle with which he affiliates, and permitting challenges to be interposed, and the test oath to be required as to party affiliation, also apply.

**Elections — Secret Ballot — Primary Election Law.**

5. Section 129 of the constitution of this state, guaranteeing a secret ballot, is not infringed by the act in question.

**Constitutional Law — Delegation of Legislative Powers — Election of Senators.**

6. Said act is not vulnerable to attack upon the ground that it is an unlawful delegation of power granted to the legislature by the federal constitution.

**Statutes — Binding Successive Legislatures — Nomination by Primary Election — United States Senators.**

7. The contention that said act unlawfully attempts to bind successive legislatures is, for reasons stated in the opinion, not tenable.

**Courts — Grounds of Jurisdiction — Supervisory Jurisdiction.**

8. Certain preliminary questions of practice, urged by defendant pertaining to relator's right to make the application, considered, and disposed of adversely to his contention.

Original application by the state, on relation of T. F. McCue, Attorney General, and another, for the issuance of a prerogative writ to enjoin Alfred Blaisdell, as Secretary of State, from certifying to the various county auditors the names of certain persons as candidates for the office of United States Senator. Writ denied.

*Ball, Watson, Young & Lawrence,* for plaintiff, *T. F. McCue, Attorney General (S. E. Ellsworth, A. G. Divet,* and *Guy C. H. Corliss,* of counsel), for defendant.

FISK, J.   The relator, who is a qualified elector of Hettinger county, makes application to this court, in the name of the state, for the issuance of a prerogative writ to enjoin the defendant, as Secretary of State, from certifying to the various county auditors the names of certain persons as candidates for the office of United States Senator from this state, for the purpose of having such names printed on ballots to be used at the ensuing general election, to determine the choice of the Republican electors as between such candidates.   Relator prays that, if such names have already been thus certified by defendant, he be required and commanded to cancel such certificate.   In his affidavit, upon which the application is based, relator avers that he requested the Attorney General to make application for such writ, but he refused.   Upon the filing of relator's said affidavit an order to show cause was issued, requiring defendant to show cause, if any there be, on October 23, 1908; why the writ prayed for should not issue.   Upon the return day of such order to show cause defendant filed a motion to quash such order, and to dismiss the proceedings on specified grounds, only three of which it will be necessary to notice.   First, it is defendant's contention that "no question of public right, or one affecting the sovereignty of the state, its franchises, or prerogatives, or the liberty of the people" is presented or involved by relator's application; second, that the affidavit upon which said order to show cause was issued affirmatively discloses that the relator has not sufficient interest in the subject-matter of the proceeding, or the determination of the questions sought to be adjudicated, to enable him to institute or carry on same as plaintiff; and third, that it affirmatively appears from said affidavit that plaintiff has been guilty of laches in making the application, and hence is not entitled to the equitable relief prayed for.   Answering briefly these contentions, we decide that the first and second points are not tenable.   The questions involved clearly are publici juris, and some of them at least pertain directly to the sovereignty of the state, its franchises and prerogatives, and the liberty of its people, and the relator, being a citizen and elector, may institute and prosecute the proceedings when, as in this case, he has requested such proceedings to be instituted by the Attorney

General, and the latter has refused such request. The third ground of the motion to quash the order to show cause pertains more properly to the merits, but, however this may be, we are clear that relator is guilty of gross laches in making his application, and we might well refuse the writ solely upon this ground. However, on account of the great importance of the public questions involved, we have concluded to ignore or overlook plaintiff's laches, and to rest our decision upon the more vital questions pertaining directly to the merits. Relator relies, for his right to the equitable relief sought by him, upon the following three propositions: "(1) The law in question (chapter 109, p. 151, Laws 1907), and all parts thereof dealing, or attempting to deal, with the selection of a party candidate for the office of United States Senator, is void and un-constitutional, in that it requires of each candidate for the legislative assembly that he shall take and subscribe an oath and pledge, which add to the qualifications of a candidate and of an elector, other than those required by the Constitution of the state. (2) The act in question deals with the general election laws, providing for the submission of a certain form of ballot at such general elections, and contains a subject not included within the title to the act, and one which cannot be included within the title to said act, nor considered in connection with the real object of the act. (3) The Legislature cannot provide for any action by the electors or the people of the state, upon the subject of nomination or selection of members of the United States Senate." We shall assume for the purpose of this case that, if these contentions are sound, the writ should issue, although we confess our inability to understand just how the writ prayed for can, if issued, operate to undo what has already been done by defendant pursuant to this law. The candidates for the Legislature have long since taken the oath, and made or given the pledge exacted of them by sections 3 and 4 of the act. Such pledge, at the most, merely created a moral obligation to fulfill the same. If the law under which the pledge was exacted is held void, the moral obligation will still continue, and no judgment of a court can obliterate it. It would seem that courts do not and cannot deal with mere moral obligations as distinguished from legal obligations. Their functions are restricted to the latter. But, however this may be, we shall assume for the purposes of this case that relator's counsel are correct as to the remedy invoked, and we will proceed to consider the correctness of

the contentions upon which relator bases his right to such remedy. It is broadly asserted that chapter 109, p. 151 aforesaid, which is known as the "Primary Election Law," is unconstitutional and void, in so far as it relates to the nomination of, or permits an expression by the people of their choice of, a candidate for United States Senator. To this extent only is the validity of the law challenged. It is urged, first, that the law is invalid and unconstitutional in that it requires of legislative members an additional oath, test, and declaration to that fixed by the Constitution of the state, Section 211. Said section is as follows: "Members of the legislative assembly and judicial departments, except such inferior officers as may be by law exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation: 'I do solemnly swear (or affirm as the case may be) that I will support the Constitution of the United States and the Constitution of the state of North Dakota; and that I will faithfully discharge the duties of the office of ———— according to the best of my ability, so help me God' (if an oath)—under pain and penalty of perjury (if an affirmation)—and no other oath, declaration or test shall be required as a qualification for any office or public trust." Section 3 of the act in question requires the candidate for the office of member of the Legislature to file a petition, to which shall be attached the following oath: "I ————, being duly sworn, depose and say that I reside in the county of———— and state of North Dakota; that I am a qualified voter therein and a ————; that I am a candidate for nomination to the office of ———— to be chosen at the primary election to be held on ———— 190—, and I do hereby request that my name be printed upon the primary election ballot as provided by law as a candidate of the ———— party for said office." Section 4 of said act also requires such candidate to give the following pledge: "I, the undersigned, a candidate for the office of member of the legislative assembly of the state of North Dakota, do obligate myself to the people of the state of North Dakota and to the people of my legislative district that during my term of office I will support and vote for that candidate for United States Senator in Congress of the party of which I am a member who has received a majority of such party votes for that position at the primary election next preceding the election of the United States Senator in Congress; provided, that in case no candidate of my party receives forty per cent. of

all the votes cast for the office of United States Senator of my party, then and in that case I pledge myself to vote for the candidate of my party who receives the highest number of votes of my party at the general election succeeding such primary election." If the provisions of said act requiring said oath and pledge conflict with section 211 of the Constitution of this state, then, of course, those portions of the act are null and void. We think it plain that they do thus conflict, as they add another oath, declaration, and test as a qualification for the office. The tendency of such provisions is to deter, hamper, and interfere with, not only persons in becoming candidates for members of the Legislature, but with the electors in nominating such candidates, and to this extent said provisions interfere with the free exercise of the elective franchise of the citizens.

The constitution of the state of Michigan contains an oath in substance the same as that required by section 211 of our Constitution, and provides, as does our Constitution that, "no other oath, declaration or test shall be required as a qualification for any office or public trust." And in the case of Dapper v. Smith, 138 Mich. 104, 101 N. W. 60, the court said: "Kent county primary election law (section 3), requiring that before the name of a candidate shall be placed on the ballot at a primary election, such candidate shall on oath declare his purpose to become such, is a violation of the Constitution (article 18 § 1), prescribing the oath which shall be required of public officers, and providing that no other oath shall be required as a qualification for any public office, since thereby the voters are precluded from choosing as a candidate one who declines himself to seek the office." Later on in the opinion it is said: "This provision is not one designed for the benefit of the aspirant for public station alone. It is in the interests of the electorate as well. The provisions of this law which requires that, before the name of any candidate shall be placed on the ballot at the primary election, such candidate shall on oath declare his purpose to become such, excludes the right of the electorate of the party to vote for the nomination of any man who is not sufficiently anxious to fill public station to make such a declaration. The man who may be willing to consent to serve his state or his community in answer to the call of duty, when chosen by his fellow citizens to do so, is excluded, and the electorate has no opportunity to cast their votes for him. It is not an answer to this reasoning to say that the electors may still vote for such a man by

using pasters. We cannot ignore the fact that parties have become an important and well-recognized factor in government. Certain it is that this law fully recognizes the potency of parties, and provides for party action as a foundation toward the choice of an office at the election. The authority of the Legislature to enact laws for the purpose of securing purity in elections does not include the right to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise. We cannot escape the conclusion that the provision in question does most seriously impede the elector in the choice of candidates for office, and that it is in conflict with the provisions of section 1, art. 18, of the Constitution."

It is, of course, plain that the provision of our statute exacting the pledge aforesaid is much more vicious than the Michigan provision, which was condemned in the foregoing case. The candidate is required by such pledge to obligate himself to discharge certain of his public duties, if elected, in a certain way. He by such pledge divests himself of all discretion and freedom of action in the discharge of a portion of his official duties, if elected. This necessarily operates to hamper and restrict persons in becoming candidates for such office, and is therefore void. It is no answer to this to say that the statute merely forces upon him a moral obligation in respect to the matters covered by the pledge, and that such an obligation would rest upon him in the absence of such statute. This would not necessarily be true where the candidate had not seen fit to voluntarily make such a pledge to his constituents. We conclude that the requirement of such a pledge violates section 211 of our Constitution, in that it exacts an additional test in contravention thereof. But does it necessarily follow from this that all other portions of chapter 109, relating to the election of United States Senators, and giving the electors of each party an opportunity to express their choice for the candidates for such office, are void also? We think not. The pledge requirement is but one step to effectuate the main object sought to be accomplished, to wit, the selection of a United States Senator in accordance with the choice of a majority of the members of the political party with which he affiliates. Another and entirely independent step or method looking to the accomplishment of this object is the provision permitting the voters of each party to record their choice at the primary, and, in certain cases, at the general election. The

fact that the legislative object sought to be accomplished is, or may be to a certain extent, interfered with by reason of the fact that one provision or measure looking to such end is ineffective on account of the invalidity of the law is, to our minds, no reason why the main object must fail when other independent provisions of the law, designed to aid in effecting such object, are not vulnerable to attack. In other words, the provisions of this law, permitting an expression of the party will as to United States Senators, if constitutional, must stand, even though the provisions requiring a pledge from the legislative candidate that he will abide by such expressed will cannot stand because unconstitutional. The main object of the law will ordinarily be accomplished about as effectually without the statutory pledge as with it. As before stated, the statutory pledge, if valid, would create no more than a mere moral obligation. Therefore it cannot be successfully contended that the legislative intent will be frustrated if one provision of the statute is upheld and the other nullified. Each are separate and independent provisions, although designed to effectuate the same main object or purpose. Furthermore, section 36 expressly provides: "In case any of the provisions of this act should be declared unconstitutional, that shall not affect the validity of any of the other provisions of this act."

This logically brings us to a consideration of relator's third proposition, which is that the entire act, so far as it relates to candidates for United States Senator, is void under the Constitution of the United States. Much of the argument of relator's counsel upon this branch of the case is based upon the assumption that the pledge feature of the law, when considered in connection with the provisions permitting the members of each political party to designate their choice as to senatorial candidates, in effect operates as an election of United States Senators by popular vote, instead of by the Legislature, as the federal Constitution requires. If, therefore, the pledge feature of the statute is eliminated because unconstitutional, much of counsel's argument ceases to have any force. It certainly cannot be contended that the provisions permitting the voters of each political party merely to designate their choice for senator amounts to an election of such senator, as it amounts to nothing more than the right of petition, a right of which they cannot be deprived. The legislative member is in no manner obligated or required, except perhaps morally, by reason of party

support and fealty, to vote and support the candidate of his party's choice as thus expressed.

But, conceding, for the sake of argument, that the provisions of this primary law contravene the provisions of the federal Constitution relating to the election of United States Senators, it by no means follows that this relator can raise the question, or that this court has jurisdiction to pass upon it. The federal Constitution provides by section 5, art. 1, that: "Each house shall be the judge of the elections, returns and qualifications of its own members. * *" Manifestly, therefore, the question whether a senator has been elected in the constitutional way is not a judicial question for the courts to determine, but rests entirely with the United States Senate. If this court should decide that the provisions of the statute in question are constitutional, such decision would in no manner be controlling, and the senate could say that a person elected by our Legislature at the coming session was not legally elected, and could refuse him a seat. The question is a federal one exclusively, and the tribunal to determine the same is designated in the federal Constitution to be the United States Senate. This identical question was before the Supreme Court of Louisiana in the recent case of State v. Michel, 46 South, 430; and the court very summarily disposed of the question as follows. "The next objection has reference to the promise which the voters at the primary are required to make that they will support the nominee. It is said that by this promise the nominees at said primary and members of the Legislature find themselves pledged to vote for the nominee of the same primary for United States Senator, and that that is contrary to the duty imposed upon them by the Constitution of the United States in voting for United States Senators. Suffice it to say on this ground that the engagement in question is precisely the same as that which the member of a political caucus enters into, and that no member of any legislative caucus has ever thought that he violated his duties, under the said provision of the Constitution, by becoming a member of the caucus and binding himself to abide by the result." No right is guaranteed to the citizen by the federal Constitution pertaining to the election of United States Senators. Hence relator has no standing in this court to complain that the provisions of the primary law relating to the election of United States Senators is obnoxious to the federal Constitution.

It is next contended that the law in question includes subjects not included within the title, as it amends the general election laws of the state. We are satisfied that this contention is wholly without merit. The feature of the law, in so far as it relates to what shall be done at the general election, is clearly germane to the subject embraced in the title of the act. In fact what takes place at the general election is merely a continuation of the party caucus or primary for the purpose of determining the choice of the two candidates receiving the highest vote at the June primary. The fact that it is conducted at the same time, and through the same election machinery, as the general election is conducted does not make it a part of the general election. This was done for convenience and to save expense. It is merely the consummation of an incomplete party nomination. It is therefore strictly germane to the subject expressed in the title. The case of state v. Drexel, 74 Neb. 776, 105 N. W. 174, is cited as an authority in support of counsel's contention upon this point, but as we read the opinion it is not in point at all. The court was there dealing with a section of the primary law, which read: "In no case shall the candidate of any political party be entitled to be designated upon the official election ballot as a candidate of more than one political party, and shall be designated upon the official ballot as the nominee of the party in whose nomination his name appears as the political party with which he affiliates." This section, as the court held, did not deal with the questions of a primary election at all, but with the make-up of the official ballot to be used at the general election, and hence was not germane to the title of the act. The question in the case at bar is widely different. But it is asserted by relator's counsel that the provisions of the act, in so far as they relate to the general election, tend to destroy the secrecy of the ballot, and hence are void. If their premise is correct their conclusion would be sound, but to our minds their argument is based wholly upon an erroneous interpretation of the law in question.

Counsel say in their printed brief: "All tests are required under the theory that party preservation justifies such tests as may be necessary to prevent members of other political parties from participating in the primaries of parties of which they are not members, and yet this section provides for the determination of the republican candidacy for United States Senator by the act and vote

of every elector of the state, whether Republican, Democrat, Socialist, Prohibition or Independent." They then quote the following portion of the statute: "The names of each candidate shall be placed on such ballot in the same manner as the candidate for state offices and shall be voted for in the same manner." Counsel then say: "Every elector, when he presents himself to exercise his right of suffrage, must be tendered the separate ballot containing the names of the Republican candidates for United States Senator, whether such voter be a Republican or a member of any of the other parties. To pursue any other method would be wholly void and unconstitutional. Section 129 of the Constitution of the state provides: 'That all elections by the people shall be by secret ballot subject to such regulations as shall be provided by law.' Such regulations would of necessity be only regulations consistent with the subject expressed, namely secrecy. At the general election no voter could be questioned as to his intentions or as to whom he voted for, or as to what his party politics were; for this is not a primary election. The primary election is based upon the theory that publicity is essential in order to preserve the party organizations, while the entire Australian ballot system, used at general elections, and the Constitution of the state also require that the general election shall be proceeded with under the theory that all ballots shall be secret." The language above quoted serves clearly to demonstrate that relator's counsel are laboring under a misconception as to the correct construction of the statute. As before stated, the provisions of the act relating to matters which shall take place at the general election with reference to determining the party choice as between the respective candidates for the United States Senate are as entirely separate and distinct from the general election as though they were to take place upon the following day after the June primary. And to say that the legislative intent was to place all candidates of all the parties upon one ballot is to impute to the Legislature a purpose to obliterate party lines, and to ignore party organizations, which they theretofore had so carefully safeguarded and preserved. When this statute as a whole is considered, it is entirely clear what the legislative intent was, namely, that a separate ballot should be used for the candidates of each political party where such candidates failed to receive 40 per cent. of their party vote at the June primary. The wording of the statute is possibly susceptible of the construction assumed by counsel, but, where

reasonably permissible, we must give the language a construction which will effectuate, rather than nullify the apparent legislative will, and the whole act must be construed together in order to arrive at a proper interpretation. In the same section we find the following clause: "That in case no candidate receives 40 per cent. of all the votes of his party * * * then the two candidates of each party who receive the highest number of votes cast at such primary election shall be placed on a separate ballot to be voted for at the general election following." The word "separate" as there used does not mean separate from the general ballot, but it means separate as to each political party and the sentence quoted by counsel should be read as follows: "The candidates of each party are to be placed on such separate party ballot under their proper party heading." This construction harmonizes with the balance of the act. This effectually disposes of counsel's contention upon this point.

But a word with reference to the secrecy of the ballot at the general election. As we have said, what takes place at the general election with reference to recording the voter's choice as to his party's candidates for the United States Senate is a mere continuation of the June primary, and may be correctly said to be a part of the primary. This being true, the following provisions of the act are as applicable to such primaries held at the time of the general election as to the primary held in June: "The judges and inspectors of election when handing a ballot to a voter shall inform him that he must vote for the candidates of the political party such ballot represents only, and the voter shall call for the ballot representing the party or principles with which he affiliates and he shall receive such ballot and no other." Also: "It shall be unlawful for any person to call for or vote a ballot at the primary election herein provided for except a ballot representing the party or principle with which he affiliates, and any person who has reason to believe that the ballot called for by the voter does not represent the party or principle with which said voter affiliates. may challenge such voter and he shall not be entitled to cast his ballot unless he makes and files with the inspector of such primary election an affidavit to the effect that such ballot represents the political party with which he affiliates." The words "primary election herein provided for" refer, not only to the June primary, but the continuation thereof held at the general election. If the

above construction of the statute is sound, and we believe it is, then there is no room for the contention that the constitutional provision with reference to secrecy of the ballot will be infringed. Such a test, applied to voters at a primary election, is imperatively necessary to preserve the party organizations, and is everywhere upheld. The secrecy of the ballot to be voted at the general election is preserved just as effectually as though this caucus or primary was held on the day before, instead of on the day of, the general election. With reference to the meaning of the constitutional provision as to a secret ballot, the Supreme Court of California in a very recent case said: "It is the secrecy of the ballot which the law protects, and not secrecy as to the political party with which the voters desire to act. The primary law does not prevent him from voting secretly. We cannot preceive where this law exposes any person advocating doctrines distasteful to any section of the community to its enmity any more than such a person would be exposed if he cast his ballot at a primary election held under the direction of the party managers without control of the law." Katz v. Fitzgerald (Cal.) 93 Pac. 112.

Another point urged by relator's counsel is that the act is a delegation of power expressly granted to the Legislature. This contention is devoid of merit. In the first place it does not amount to a delegation of power. The Legislature still elects the senator, and the act merely gives the voters of each party an opportunity to express their choice of candidates, as we have heretofore observed. Furthermore, if it does, in effect, delegate such power, this relator is not the one to complain. As before stated, that is a federal question, with which this court has nothing to do. Again, conceding that it is a delegation of power, it is not a delegation of legislative power, as the Legislature, in electing a United States Senator, does not act in a legislative way at all. It merely acts as an elective body, and we know of no provision of our state Constitution which thus limits the Legislature.

Lastly, it is said that the act attempts to bind successive Legislatures. Our answer to this is that each Legislature has plenary power when not restricted by the state or federal Constitutions, and hence may repeal the entire primary law at any time it chooses to do so. Furthermore, it is not true, as stated, that the act thus operates. It does not bind the Legislature to do anything. It merely permits an expression of choice by the voters, and by its

provisions, in effect, provides a convenient method of exercising the constitutional right of petition. In section 165, Black's Const. Law, in speaking of the right of assembly and petition, as conferred by the first amendment to the federal Constitution, the author says: "The right secured by the Constitution extends only to petitions 'for redress of grievances.' In respect, however, to the privilege which attends petitions made in good faith and in a proper manner the term is one of wide import. It includes, not only requests for the passage or repeal of laws, and for the removal of officers who have abused their authority, but also recommendations to office, remonstrances against proposed appointments or the grant of licenses and privileges, and demands for any sort of official action or forbearance."

Entertaining the foregoing views, it follows that the writ prayed for must be denied, and it is so ordered.

MORGAN, C. J., concurs.

SPALDING, J. (dissenting in part). With much of the opinion of my associates I agree. If, however, I were acting alone, I should not entertain the application in this proceeding at this late date. It is an application to this court on its equity side, and the relator does not come before us with the clean hands which should be presented when seeking equitable relief. I do not mean that he is guilty of fraud, but that he has been guilty of gross laches, which should deprive him of standing in a court of equity. Under the primary law (Laws 1907, p. 151, c. 109) petitions of candidates, who desired their names placed upon the primary ballot, were required to be filed with the Secretary of State by the 25th day of last May. On that day this relator knew that six persons were candidates for nomination to the office of United States Senator in this state. He could have then taken steps to test the validity of the senatorial provisions of the statute, and, had they been held void, much waste of effort would have been prevented. Again, when the vote was canvassed, and he ascertained that his favorite, whoever it may have been, was unsuccessful, an opportunity was open for application for the relief which he demands, without putting the candidates who had the highest number of votes to the expense, and the people to the inconvenience, of preparing for again submitting the question at the November election. Not doing so, the two candidates have been permitted to continue the campaign

for some months, undoubtedly and naturally at great expense both in time, effort, and money, until the 17th day of October, when application was made for the issuance of the writ. Notice of such application was not served on the candidates until Tuesday, the 20th inst. It was argued on Friday and Saturday, the 23rd and 24th insts. The court has had three days in which to consider the many very important and new constitutional questions involved. Counsel for the relator were prepared with an elaborate brief in support of their contentions, but counsel for the respondent, and for the candidates, had not to exceed three days in which to prepare for argument, and were unable to submit briefs. Under these circumstances this court would be justified in refusing to give the matter consideration, and I am of the opinion that it is not justified in considering and attempting to decide such questions with so little opportunity for consideration and reflection. I would not, however, in view of the attitude of my associates, suggest these reasons were we able to agree on all other questions. The fact that we are not emphasizes the undesirability of considering and attempting to pass judgment upon such questions when at best, in my opinion, any conclusion at which the court arrives must be largely a guess.

On the merits of the proposition I can concur with most that is said in the majority opinion. No doubt can exist that the Senate of the United States is the final judge of the election of its own members, and that any decision which we reach in the premises will not control or influence that body, yet this fact, as it appears to me, should not, and does not, prevent or excuse the courts of a state from passing upon the validity of state laws which involve directly or indirectly the election of senators. The state courts are not courts of last resort on federal questions in any instance. My associates have arrived at a conclusion, however, upon one question, which, with my present light on the subject, I am unable to concur in. And it is a very important question in this election. Not important as to future elections, because it can readily be amended by the Legislature. I refer to their construction of section 13, p. 157, Primary Election Law 1907. That section in part reads as follows: "The candidate receiving the highest number of votes at such primary election shall be the nominee of his party for the office of United States Senator at the succeeding session of the legislative assembly which is to elect a United States Senator; provided, however, that in case no candidate receives forty per

cent. of all the votes of his party cast for the office of United States Senator, then the two candidates of each party who receive the highest number of votes cast at such primary election shall be placed upon a separate ballot to be voted for at the general election following. Such ballot shall be prepared in the same manner as the general election ballot commonly known as the 'Australian Ballot,' is prepared. The candidates of each party are to be placed upon such ballot under their proper party heading. The names of each candidate shall be placed upon such ballot in the same manner as the candidate for state officers and shall be voted for in the same manner." The language in question refers to the general election, and to the Australian ballot used thereat. It is clear to me that in using the words "upon a separate ballot" the legislative mind was directed toward the Australian ballot, and that its intention was that the ballot for the nomination of United States Senators should be separate and apart from the Australian ballot, on which are placed the names of the candidates for congressional and state offices to be elected, and that it does not mean, as held by a majority of this court, a separate ballot for each party which had failed to make nominations at the June primary for senator.

This construction is fortified by further consideration of the section. It continues, "such ballot shall be prepared in the same manner as the general election ballot is prepared. It does not read "such ballots," as it undoubtedly would have been made to read had the Legislature contemplated a separate ballot for the senatorial candidates of each party which had failed to nominate at the June primary. And it continues, "The candidates of each party are to be placed upon such ballot under their proper party heading." It does not read, as it otherwise would have read, "upon such ballots." In each place the plural should have been used rather than the singular. "Under their proper party heading," refers to the headings of the columns devoted to the different parties, clearly contemplating that, in case two or more parties failed to nominate a candidate for senator in June, there should be one senatorial ballot containing a separate column, with a party heading, like the party heading in the Australian ballot, for each party. In other words, it appears clear to me that the meaning of this provision is that, when the candidates of one or more parties fail to receive 40 per cent. of the vote in June, the names of the two highest candidates of each of such parties go upon one ballot, known as the "senatorial

ballot" at the November election, the Republican candidates in one column, headed "Republican" and the names of the other candidates in other columns, headed, "Democratic," and so on, and that this ballot is to be handed to each voter at the general election. It is true that courts should, where two constructions are possible, give to a statute that construction which will sustain its validity, but in doing so they are not required to give a strained construction, or to give to the language a meaning different from that in which it is ordinarily used, or read into the statute something which is not clear should be meant by the language which it does contain. I venture the assertion that of the several thousand election officers who will serve on the third proximo, not 1 per cent. would on reading this act think of its bearing the construction given it in the majority opinion. Neither will it occur to them that they should challenge votes, or take any steps to see that only Republicans vote the senatorial ticket. I am fortified in this belief by the fact that on the argument, where the relator, the Secretary of State, and each of the contesting candidates were represented, all by able counsel, it was conceded by counsel for the relator, and for the Secretary of State, and at least for one of the candidates that this provision only required or permitted one senatorial ballot for all parties which failed to make nominations at the June primary. This was the one point on which counsel for the different parties were unanimous. The provisions in other parts of the law for challenging voters as to their party affiliations clearly refer only to the June primary. Now the importance of this point consists in this: Courts, so far as I have been able to learn, while uniformly holding that primary elections are so far matters of public concern as to be proper subjects of legislative oversight and of reasonable regulation, at the same time hold that, when the Legislature undertakes to regulate them, it must do so in such a manner as to protect each party from having its affairs managed, or its nominations made by members of other parties, or by persons who belong to no party.

Primary election laws have several objects. Among them are the protection of the public against the corruption of the ballot, and the nominations of candidates by small fractions of the party, and the preservation of party organization. If a law permits people to vote indiscriminately, without reference to their party affiliation, for candidates representing a party to which they do not belong, the whole purpose of a primary law is subverted. Instead

of preventing corruption, it would furnish the widest opportunity for it, by permitting the turning of the management of a party over to its enemies; and the courts, so far as they have passed upon this question, invariably hold that primary laws which permit this to be done are invalid. The Legislature is not compelled to legislate on the subject of party nominations, but when it assumes and attempts to do so, it is in recognition of the fact that parties exist, and are necessary to the promotion of the public welfare, and any law which permits the destruction of parties by these means fails of its purpose and is invalid. If my interpretation of section 13 is correct, it means that in the present instance the Democrats having nominated their candidate for senator at the June primary, may take part in the nomination of a Republican candidate for senator at the November primary, thus not only nominating their own candidate, but possibly exerting a controlling influence in the nomination of the Republican candidate. The injustice of this cannot be denied. The Legislature is not required to legislate regarding the organization of churches or secret societies, or to provide for their incorporation or management, but when it does so, it cannot provide that the members of the Lutheran Church shall or may control the management of the Catholic Church, nor would a law permitting the Odd Fellows to control the affairs of the Free Masons be sustained.

This question was passed upon by the Supreme Court of California, in Britton v. Board of Election Com'rs, 129 Cal. 337, 61 Pac. 1115, 51 L. R. A. 115. It says: "Active political parties —parties in opposition to the dominant political party—are, as has been said, essential to the very existence of our government. The right of any number of men holding common political beliefs or governmental principles to advocate their views through party organization cannot be denied. As has been said, 'Self-preservation is an inherent right of political parties, as well as of indivduals.' Whipple v. Broad, 25 Colo. 407, 55 Pac. 172. A law which will destroy such party organization, or permit it fraudulently to pass into the hands of its political enemies, cannot be upheld. The procedure of political parties may be regulated, and the wisdom of the Legislature may well be exercised, in devising methods to check political corruption and fraud; but the Legislature itself, under the guise of regulation, cannot be permitted to throw open the doors to these very abuses. A law authorizing, or even permitting, the

opponents of an organized political party to name the delegates to the nominating convention of that party would not for a moment be countenanced. Yet that, in effect, is precisely what the act under consideration does permit. It provides that the primary election of all political parties shall be held at the same time. To the intending voter at such primary one ticket is given. No question may be permitted touching his political affiliations, past, present, or future. The voter takes the ticket, retires into the privacy of the booth, and there, secretly, and not in violation of any law, but in strict accordance with the law, names such delegates as he desires to the political convention of one or another of the parties, whether he is a member of that party or not, whether he ever intends to become such a member or not. The result is apparent. The control of the party and of its affairs, the promulgation and advocacy of its principles, are taken from the hands of its honest members, and turned over to the venal and corrupt of other political parties, or of none at all. Masquerading thus under the name of one of the great political parties might be a convention of men, authorized by this law to represent it, and place upon the general election ballot, as its candidates, those whom they might select—a body of men whose sole purpose might be the disruption and destruction of the party whose representatives this law declared them to be. It is expressly declared in the Declaration of Rights that the enumeration therein contained shall not be construed to impair or deny others retained by the people. A law which thus permits the disruption and misrepresentation of a political party is an innovation of these reserved rights." This construction has been approved in Morrow v. Wipf (S. D.) 115 N. W. 1124, and Rouse v. Thompson, 228 Ill. 522, 81 N. E. 1109, and I think by other courts.

Of course, if the law contemplated the nomination of United States Senators or the expression of a preference by the people as between the different candidates by voters of all parties, it would present a different question, but that is not the purpose of this law, its purpose being to provide for party nominations, and if my construction of this section is correct, the vice of the law lies in that it permits the voters of a party which succeeds in making a nomination in June to participate in the nomination of a candidate representing a party to which they do not belong, or with which they do not affiliate in November, for the same position. Even if section

13 does admit of the construction given it by my associates, the meaning is so obscure as to defeat the purpose of the provision and thereby render it invalid.

In brief, my opinion is that, because the Legislature has attempted to regulate party·primaries and nominations, it must do it in a manner which, with reasonable certainty, prevents the participation of any but members of a party in its management or nominations; that if it has failed to do so, or if the language of the act is so involved, or its meaning so obscure, that most men of fair intelligence would, on reading its provisions, fail to find any method provided for party protection, it must fail. This in my judgment applies to that part of the law relating to the November nominations of senatorial candidates.

For these reasons, inadequately expressed, but as fully discussed as the brief time at my command, before the opinion must be filed to render it of any effect in the coming election, will permit, I conclude that the provisions of chapter 109, p. 151 of the Laws of 1907, relating to the vote for the nomination of a candidate for United States Senator at the same time and place as the general election is held, are invalid, and, to that extent, I dissent.