## STATE ex rel. GRAY v. OLSEN et al.
### (137 N. W. 561.)

1. **Injunction—Election—Restraining Secretary of State From Certifying Republican Nominations for Presidential Electors—Party Ticket.**

Where no other republican Taft presidential electors for the republican candidate for president have been nominated and whose

names might appear on the regular republican ticket, a republican voter, not being himself a candidate for presidential elector or for any other office affected by the action of the republican state convention whose acts are complained of, may not sue to restrain the secretary of state from certifying to county auditors the nominations for presidential electors selected by such state convention, on the ground that his right to vote, or his opportunity to vote for President Taft by means of the regular republican ticket on the official November election ballot, will be invaded; since the only effect of the injunction would be to leave a vacancy in the republican ticket on the official ballots as to republican nominees for presidential electors without protecting or operating to enforce or secure to plaintiff or any other similarly situated republican the right or opportunity to so vote for Taft.

2.  **Injunction—Protection of Lawful Right Involved—Relief—Idle or Useless Acts.**

An applicant for injunction, under Sec. 197, Code Civ. Proc., has the burden of showing he will be in some manner injured or deprived of a lawful right without the aid of such injunction, and that the injunction will give him the desired relief. Courts should not be required to perform idle or useless acts.

3.  **Injunction—Judicial Notice of Political Situation—Evidence.**

The supreme court will take judicial notice of the present situation existing in this state; and, so doing, held, that the showing made by plaintiff is not sufficient to empower the court to grant the prayed for injunction.

4.  **Statutes—Election—Primary Election Law—Referended Act—Emergency Clause.**

The "Richards Primary Law," so-called, is not now in force; that statute was never passed as or for the purpose of becoming a law, but only for the purpose of being submitted to vote under the initiative and referendum; this appears from its title. The emergency clause in said act does not operate to make it a law; it is but ineffectual surplusage.

5.  **Injunction—Action Ex Rel.    Attorney General Not Involved—Political Party Not the People—Relief to Political Party.**

This application for injunction is not, and is not presented as a cause maintainable by the attorney general on behalf of the people. Neither a political party nor a considerable membership thereof constitute the people of this state for the purpose of seeking relief by injunction to restrain the secretary of state from certifying to county auditors nominations for presidential electors; and whether the suit is brought by the attorney general on behalf of the state, or by a private individual as a

member of the republican party on behalf of himself and others, a proper cause for injunction under rules of equity must be established.

Haney and Corson, J. J., dissenting.

(Opinion filed September 23, 1912.)

Application by the State, at the relation of John Gray, against Oscar C. Olsen and others as Republican nominees for presidential electors, and S. C. Polley, as Secretary of State, for an injunction restraining the Secretary of State from certifying to the county auditors the nominations for presidential electors selected by the Republican state convention. Demurrer to complaint sustained, and application for injunction denied.

*H. C. Preston, Perry F. Loucks, C. G. Sherwood,* and *Royal C. Johnson,* Attorney General, for Defendants.

We submit that the complaint presents no case upon which the jurisdiction of a court of equity can be founded. Green v. Mills, 69 Federal, 852.

A court of equity will not undertake to supervise the acts and management of a political party for the protection of a purely political right. Winnett v. Adams, 99 N. W. 681.

"A court of equity has no jurisdiction to enjoin officers of a state from issuing a certificate of nomination, the right involved being purely political." Anthony v. Burrow, 129 Federal, 784; People v. Rose, (Ill.) 71 N. E. 1124.

Plaintiff makes no claim that any one has a better right to appear on the ticket as presidential electors than defendants. Weaver v. Toney, 54 S. W. 732 (Ky.); State v. Dunbar, 85 Pac. 337 (Ore.); State v. Thorson, 9 S. D. 149; Shoemaker v. City of Des Moines, 105 N. W. 520 (Ia.); Fairchilds v. Ward, 151 N.Y. 359, 25 N. Y. S. 381.

"The voice of the convention was the very voice of the Democratic party. The work of that convention is the law of the party and the courts cannot look beyond this work or this law because there is no other." Cain v. Page, 42 S. W. 336 (Ky.); Moody v. Trimble, 50 L. R. A. 810 (Ky.); Rose v. Bennett, 56 Atl. 185 (R. I.); State v. Crittenden, 64 S. W. 162 (Mo.); Clarke v. Morran, 63 Pac. 388(Mont.); State v. Weston, 70 Pac. 519(Mont.) People v. Dis. Court, 74 Pac. 896 (Colo.); Davis v. Hambrick, 58 S. W. 799 (Ky.) Stephenson v. Board, 76 N. W. 914 (Mich.);

Phelps v. Piper, 67 N. W. 755 (Neb.); Allen v. Clynn, 29 Pac. 670 (Colo.); State v. Sturdevant, 62 N. W. 35 (Neb.); People v. Dist. Court, 31 Pac. 339 (Colo.); Kellog v. Hickman, 21 Pac. 325 (Colo.) 30 Cyc. 768; State ex rel. Howells v. Metcalf, 18 S. D. 393; see this case, Independent Party Nominations, 57 Atl. 344 (Pa.) Davidson v. Hanson, 92 N. W. 93 (Minn.) Blaire v. Hinrickson, 37 N. C. 683 (Ill.) People v. Board, 55 N. Y. 393; State v. Martin, 62 Pac. 588 (Mont.).

It must be remembered that the law of 1909, provides the conditions under which the party nominees shall go upon the official ballot, and how the party convention shall be called, organized and conducted,—how can it be said that any act of the National Republican Convention in Chicago, can in any way modify, change or nullify the legally called convention held at Huron, July 2, 1912. State v. Houser, 100 N. W. 964 (Wis.).

The court is not the forum for the determination of questions of a political character, and it is not for the courts to say that it will be denied to these defendants the rights which belong to their membership of the Republican party. State v. Board of Election Comm., 78 N. E. 1019; People ex rel. McKinley; (Ill.) 71 N. E. 1124; State ex rel Kennedy v. Martin, (Mont.) 62 Pac. 588; Phelps v. Piper, (Neb.) 67 N. W. 755; 21 Am. & Eng. Ann. Case 269; Whipple v. Broad, (Colo.) 55 Pac. 172.

Who is entitled to name "Republican Party?" Whipple v. Hartzell, 55 Pac. 186 (Colo.) Ogg v. Glover, 83 Pac. 1039 (Kans.).

*A. J. Plowman, Chambers Kellar,* and *L. L. Stephens,* for Plaintiff.

This is a suit for an injunction to restrain the defendant, S. C. Polley, as Secretary of State, from directly or indirectly recognizing the other defendants, or either of them, as candidates of the Republican party for presidential electors of South Dakota, and from certifying to the county auditors of any county of the state the name or description of either of the above named defendants as the person named as a candidate of the Republican party of South Dakota, for the position of presidential elector from said state, etc.

That the suit is brought by the plaintiff in his own behalf and

in behalf of all other citizens of South Dakota who are members of the Republican party, and similarly situated.

The complaint alleges that at the alleged Republican convention held at Huron on the second of July, 1912, the defendants, other than Polley, were attempted to be chosen as candidates of the Republican party of South Dakota for the position of presidential electors of said state, and that said defendants were not otherwise chosen. That said defendants have procured an alleged and pretended certificate of nomination executed by the pretended chairman and secretary of said pretended convention certifying that the said defendants had been duly nominated as the Republican nominees for the position of presidential electors of South Dakota, and filed the said alleged certificates of nomination in the office of said Polley, as Secretary of State. Said defendants claim the right to have their names printed as the regular nominees of the Republican party for presidential electors to be voted for at the general election, and that said Polley, as Secretary of State, has accepted said certificates as legal certificates of nomination, and has filed the same, and has threatened to and intends to and will certify the names of said defendants to the several auditors of the counties of the state, with orders and instructions to have such names of said defendants, except Polley, printed upon the official ballot at the general election in November, 1912, as the sole, exclusive, legal and regular nominees of the Republican party of South Dakota for the offices of said five presidential electors.

It is plaintiff's contention that the defendants, other than Polley, have not been legally nominated, and that there is no authority of law for filing said certificate, and that said Polley is acting without authority of law in certifying said names to the various county auditors of the state.

Chapter 201, Sess. Laws of 1911, being the primary law for the nomination of all *party* candidates, the defendants, excepting Polley, who claimed to have been nominated as presidential electors at the Huron convention, on the first Tuesday of July, 1912, were not nominated by the voters of the state; nor by a convention having any authority to do so. If appointed at all, they were appointed under the primary laws of 1909, but these were repealed by Section 156 of the primary law of 1911, p. 288. Section 104 abolished all state conventions for the nomination of party candi-

dates and principles for national, state, judicial, county and legislative offices. Sec. 46, p. 257, Laws 1911, required the candidates for presidential electors to be nominated by petition, and Sec. 24, p. 252, provides:

"Hereafter all party candidates for all of the elective, congressional, state, county, legislative and district offices, and for the office of United States senator and presidential electors, and all party delegates and alternate delegates to the national conventions and all precinct, county, state and national committeemen, party state chairmen and majority and minority proposal committeemen shall be nominated, and party representatives elected, at the primary held in accordance with the provisions of this act."

This was not done. Not being elected by the people in the manner provided by the legislature, and only claiming to be nominated by the Huron convention, which had been abolished by law, these defendants, candidates for presidential electors, have no color of title or right to have their names placed on the ballot in November to be submitted to the voters of the state. They claim to be the party candidates of the Republican party. That is an old established party that cast a vote and elected a governor at the last election. Therefore, these defendants, claiming to be electors, cannot be nominated as republicans even by petition. If we apply the same rule that this court applied to the law of 1907 in Morrow v. Wipf, 22 S. D. 159, it applies to all organized parties.

Right to vote is a civil right.

That the right to vote is a civil right granted by the constitution and laws of this state, and is within the protection of the law is shown by the following cases; Britton v. Board of Elec. Com'rs., 61 Pac. 1115, 129 Cal. 337; People v. Board of Elec. Com'rs. of Chicago, 77 N. E. 321 (Ill.); Murphy v. Curry, 70 Pac. 461-3 (Cal.); State v. Phelps, 128 N. W. 1041-1045; Koerber v. Patek, 123 Wis. 415, 102 N. W. 40-42; Same v. Frear, 128 N. W. 1061; Baker v. Board of Elec. Com'rs., 68 N. W. 752.

The right of suffrage is derived from the constitution of the state. State v. Weber, 105 N. W. 490 (Minn.); Pearson v. Board of Sup'rs. of Brunswick Co., 91 Va. 322, 21 S. E. 483; United States v. Crosby, Fed. Cas. 14, 893; Healey v. Wipf, 22 S. D. 343. 117 N. W. 521; Spragins v. Houghton, 3 Ill. (2 Scam.) 377:

Coffin v. Board Elec. Com'rs. of Detroit, 97 Mich. 188, 56 N. W. 567; Clayton v. Harris, 7 Nev. 64.

The provision of the Const. Art. II, Par. 1, declaring that every male citizen shall, in all cases therein mentioned, be entitled to vote, requires no legislation to give it effect; and the fact that there was once a statute limiting voters to male citizens, which has been repealed, does not have the effect of not denying the right to females. People v. Barber, 48 Hun. 198.

The right of suffrage is one which its possessor holds as a citizen of a state, secured by the constitution to him, and to be held on the terms prescribed by that constitution alone. Huber v. Reily, 53 Pa. St. 112, 23 Leg. Int. 228.

The legislature cannot constitutionally abridge the right to vote, and a law in regulation thereof must be reasonable, uniform and impartial. Monroe v. Collins, 17 Ohio St. 665; In re Newport Charter, 14 R. I. 655.

The people by the adoption of the constitution fixed and defined in the constitution itself what qualifications a voter shall possess to entitle him to vote, and the legislature cannot add an additional qualification. Morris v. Powell, 25 N E. 281 (Ind.); State v. Kelly, 32 So. 909 (Miss.); Pearson v. Board of Sup'rs. of Brunswick Co., supra.

Art. VI., Sec. 19 of Const.:

"Elections shall be free and equal, and no power, civil or military shall at any time interfere to prevent the free exercise of the *right* of suffrage."

Right to name Republican party.

The right to the use of the name "Republican" is a civil right, and a property right to which the republican party has obtained title by user.

Where a person does business alone under the name of a bank and a chattel mortgage is made to him under that name, the legal title vests in him. Carlisle v. People's Bank, 26 So. 115 (Ala.)

A person may adopt any name in which to transact business and may sue and be sued by such name. Graham v. Eiszner, 28 Ill. App. 269; Clark v. Clark, 19 Kan. 522; In re Snook, 2 Hilt. 566; England v. New York, P. Co., 8 Daly, 375. This case holds a person may acquire a new name by general reputation and usage.

Usages long established and followed have to a great extent the efficacy of law in all countries. They control the construction and qualify and limit the force of positive enactment. Slidell v. Grandeur, 111 U. S. 412, 28 L. Ed. 321-324; United States v. De la Maza Arrendo, 6 Pet. 691-8, L. Ed. 547; Mitchell v. United States, 9 Pet. 711, 9 L. Ed. 283; Buford v. Houtz, 133 U. S. 320, 33 L. Ed. 613.

Only regularly and lawfully organized conventions or primaries have a right to use the party name. McKnight v. Whipple, 55 Pac. 182 (Colo.); Whippel v. Wheeler, 55 Pac. 188 (Colo.); Duff v. Beckwith, 62 Pac. 838 (Colo.); Phillips v. Curley, 62 Pac. 837 (Colo.).

A party has a right to use the device and name used by it at last similar election. Kratzer v. Allen, 50 Pac. 209 (Colo.); Ogg v. Glover, 83 Pac. 1039 (Kans.); Baker v. Bd. Elec. Com'rs., 68 N. W. 752 (Mich.).

Where a name was adopted as a party designation and used for several years, and the party had a candidate for mayor, whose name is now on the official ballot, the candidate of another subsequently formed party cannot use the name for designation. Brown v. Jensen, 90 N. W. 155 (Minn.)

A candidate for congress of the former so called Social Democratic party, which has changed its name to the Socialist party, is not entitled to have the abandoned title added to the name of such candidate on the official ballot in the congressional district. Lind v. Scott, 92 N. W. 96 (Minn.); In re Morledge, 99 N. W. 355 (Minn.).

A caption on a ballot to be used at an election which is calculated to induce the elector to conclude from an inspection of the caption or headlines only that the persons therein mentioned are of his political persuasion, when they or any of them are not of such persuasion is prohibited. Shield v. Gregor, 91 Mo. 534, 4 S. W. 266; Porter v. Flick, 84 N. W. 263 (Neb.).

Injunction is the remedy. State ex rel. v. Moran, 63 Pac. 393.

The civil courts have jurisdiction in injunction proceedings instituted to protect a personal right. Itzkovitch v. Whitaker, 39 So. 499, 1 L. R. A. (N. S.) 1147.

The duty of the secretary of state to give notices of the

election of members of the senate and assembly under an appor-
tionment act is not political, but is purely ministerial, and, if the
act is unconstitutional, he may be restrained by injunction from
proceeding under it.    State v. Cunningham, 81 Wis. 440, 51 N.
W. 724.

An injunction will be granted to restrain the removal of the
county records and offices to a new seat, on a petition alleging
fraud and illegality sufficient to invalidate the legality of the pro-
ceedings, notwithstanding the statute provides a remedy by a
new vote.   Sweatt v. Faville, 23 Iowa, 321; Todd v. Rustad, 43
Minn. 400, 46 N. W. 73; Solomon v. Fleming, (Neb.) 51 N. W.
304.

Primary law.

Ch. 201, Sess. Laws 1911, p. 249-289, commonly called the
Richard's Primary Election Law, Senate Bill No. 309, was duly
enacted by the Legislature and became a law not later than March
10, 1912, and is the law that should have governed the primary
election for the nomination of all candidates.   An initiative peti-
tion was filed with the Secretary of State and by him presented
to both houses of the Legislature where it became a part of Sen-
ate Bill 309 and was passed by the Senate Monday, February 27,
1911, by an aye and nay vote, there being 36 ayes, absent and not
voting 7, excused 2, and was passed by the House Thursday,
March 2nd, 90 ayes, 10 nays, absent and not voting 3.   It is en-
dorsed "Received by the governor March 3, 1911, at 3:15 p. m."
The legislature adjourned that day, and it was filed by the gov-
ernor with the secretary of state on March 9, 1911, at 10:15 a. m.
*without any objections thereto*.   The journals therefore show that
the bill was passed by more than two-thirds majority in each
house.

The court will take judicial notice of the journals:   Comers v.
State, 5 S. D. 321, 58 N. W. 804; Ritchie v. Richards, 47 Pac.
607; Jackson v. State, 142 S. W. 1113.   Court states it would take
judicial notice of the legislative journals and judicial notice that an
election was held for adoption of initiative and referendus act.

Section 156, p. 288:   "All acts or parts of acts in conflict with
this act are hereby repealed."

Sec. 157: "There being no adequate law in this state, providing for the nomination of party principles, candidates for elective offices, delegates and committeemen, by a direct primary vote, nor provision how to determine what shall constitute an official *party endorsement* to appointive offices or orderly representation within the party, an emergency is hereby declared to exist and this act shall take effect and be in force immediately upon its passage and approval."

When the bill was returned to the secretary of state it did not bear the governor's signature or approval and if approved, it was approved by operation of law, as set forth in the constitution and statutes in existence at the time.

Sec. 1, Art. III of Const. of South Dakota: "The legislative power shall be vested in a legislature which shall consist of a senate and house of representatives. Except that the people expressly reserve to themselves the right to propose measures, which measures the legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, (except such laws as 'may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions).

Provided, that not more than five per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum.

This section *shall not be construed so as to deprive the legislature or any member thereof of the right to propose any measure.* The veto power of the executive shall not be exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by vote of the electors of the state shall be: 'Be it enacted by the people of South Dakota.' The legislature shall make suitable provisions for carrying into effect the provisions of this section."

We also cite: Section 22, Art. III. Const.; Sec. 9, Art. IV. of Const.; Tarlton v. Peggs, 18 Ind. 24.

Sec. 23, Rev. Pol. Code, 1903, pg. 5: "Any laws which the legislature may have enacted, except laws which may be necessary for the immediate preservation of the public peace, health and

safety, support to the state government and its existing institutions, shall, upon the filing of a petition as hereinafter provided, be submitted to a vote of the electors of the state at the next general election.   *   *   *"

Section 23 excepts laws containing the emergency clause. Our contention is that this bill is excepted by Sec. 1, Art. III of the constitution by reason of its containing the emergency clause, and is excepted by Section 23 of the Political Code above. Being excepted by the constitution or statute it was necessary to pass it in the same manner as though no initiative petition had been filed therefor. It could be approved by the governor either by signing it with his approval or it could become a law by operation of law by reason of the failure of the governor to return it to the secretary of state within ten days after the adjournment of the legislature *without his objections thereto*. In brief, it became a law by operation of Sec. 9, Art. IV of the Constitution. The legislature declared there was an emergency and that the act should take effect and be in force immediately upon its passage and approval, and it is for the legislature to decide and determine what circumstances, conditions or facts make an emergency and the courts have no authority to review or adjudicate the finding of the legislature on the question of emergency. State ex rel. Lavin v. Bacon, 14 S. D. 405; Mark v. State, 15 Ind. 98; Day Land & C. Co. v. State, 68 Tex. 526, 4 S. W. 865; Hendrickson v. Hendrickson, 7 Ind. 13; Carpenter v. Montgomery, 7 Blackf. 415; Biggs v. McBride, 17 Ore. 640, 21 Pac. 878, 5 L. R. A. 115; Bennett v. Sengstacken, 113 Pac. 863; Dallas v. Hallock, 44 Ore. 258, 75 Pac. 204; Kadderly v. Portland, 44 Ore. 118, 74 Pac. 710-720; Sipe v. People, 56 P. 571.

Emergency clause.

Tarlton v. Peggs, 18 Ind. 24, holds:

"An act was filed in the secretary of state's office on the day of the legislature's adjournment, at an hour later than such adjournment, by the governor, but without his approval, and without objections thereto being filed. It declared the existence of an emergency and that it should be in force from and after its passage. Held that the act became a law from and after the time of such filing." Galveston R. Co. v. Lynch, 55 S. W. 389; Texas v. Stevens, 103 S. W. 481.

In our case the governor could not return it to the legislature on account of its adjournment, but the constitution, Sec. 9, Art. IV., required him to file it with the secretary of state with his objections. There were no objections and therefore the act became a law. Town of Seven Hickory v. Ellery, 103 U. S. 423, 26 L. Ed. 435; State v. Wheeler, 89 N. E. 5; Evans v. Commonwealth, 15 Ky. L. R. 606; Boggs v. Commonwealth, 15 Ky. L. R. 653; Opinion of Justices, 3 Mass. 567; State v. Holden, 23 So. 643, 76 Miss. 158; Henry v. Carter, 40 So. 995, 88 Miss. 21; Statecup v. Dixon, 136 Ind. 9, 35 N. E. 987; Capito v. Tapping, 64 S. E. 845, 22 L. R. A. 1089 (W. Va.); Atlantic Coast L. R. Co. v. Mallard, 43 So. 755 (Fla.); Norris v. Cross, 105 Pac. 1000, is a case from Oklahoma.

Our constitution excepts all laws containing an emergency clause and includes initiated bills that have the emergency clause as well as all others. People v. Scott, 120 Pac. 126; Evans v. Commonwealth, 15 Ky. L. R. 606.

The fact that a petition was filed with the secretary of state and by him submitted to each of the houses of the legislature petitioning for the enactment and submission of the measures embraced in Ch. 201, Sess. Laws 1911, in no way affects the validity of the act, for the reason that as enacted by the legislature it contained the emergency clause and all bills, measures or laws containing an emergency clause, and that were passed by a two-thirds majority of each house, are expressly excepted from Sec. 1, Art. III, being the clause of the constitution authorizing the initiative and referendum. This court has heretofore so held in its decision rendered in the case of State ex rel. Lavin v. Bacon, 14 S. D. 394, 85 N. W. 225, the opinion being filed April 3, 1901.

This case was affirmed by the Supreme Court in the case of Kadderly v. City of Portland, supra.

This amendment to the constitution (Section 1, Art. 3) was adopted by a vote of the people held November 8, 1898, and the legislature of 1899 enacted what is now section 23 of the Political Code, p. 5, Rev. Codes of 1903, which expressly provides that:

"Any laws which the legislature may have enacted, except laws which may be necessary for the immediate preservation of the public peace, health and safety, *support to the state government*

*and its existing institutions,* * * *  shall be submitted to a vote of the electors of the state at the next general election."

The legislature that enacted this statute evidently construed this amendment to the constitution as *not including those laws therein excepted,* containing an emergency clause. The amendment itself, in the latter part thereof, contains this clause: "The legislature shall make suitable provision for carrying into effect the provisions of this section," and section 23 was the provision made by the legislature of 1899, and it contains the exception of emergency laws, so that there is no *provision of law for submitting an initiated law containing an emergency clause to a vote of the people.* If this clause, Sec. 1, Art. III, is to be construed, that an initiated law containing an emergency clause must be submitted to the people, it would virtually be a repeal of section 22, Art. III of the constitution. This certainly was not intended. To give to the constitution such a construction would make it impossible for the legislature to give immediate effect to any initiated law by an emergency clause, for under the present condition of the law, it could only be voted on at a general election.     In case of insurrection, pestilence or any other emergency cause, the whole power of the state might be suspended by filing a referendum petition containing the signatures of only five per cent of the voters of the state.

To give section 1 a construction that an initiated bill, containing an emergency clause, must be submitted to the people would be to deny to the legislature the right the constitution itself absolutely protects, for the section prohibits the courts from so construing it as to deprive the legislature of the right to propose *any measure.*

If the people should disapprove of the action of the legislature in adopting and enacting an initiated·law by adding thereto an emergency clause, the people have an ample remedy. They may initiate a bill for its repeal in toto and have the question of repeal submitted to the people, and in this manner the people may repeal it, or the legislature itself on such a bill may add thereto the emergency·clause and effect the repeal at once.

Sec. 1, Art. III, also contains this clause: "The veto power of the executive shall not be exercised as to measures referred to the people."

If a bill contains an emergency clause it is excepted from

this section, and is not a measure referred to a vote of the people, and is not withdrawn from the veto power. It must be treated by the executive as any other bill not referred and must be approved or returned with his objections as the constitution provides. Senate Bill 309 was filed by the governor in the office of the secretary of state March 9, 1911, *without* objections and therefore became a law.

McCOY, P. J.   Plaintiff makes application for injunction restraining defendant Samuel C. Polley, as Secretary of State, from certifying to the various county auditors the nominations for presidential electors selected by the Republican state convention held at Huron July 2d, under the provisions of the primary law. The electors so nominated are also defendants. Plaintiff as a Republican voter and elector, by his petition, claims the right to such injunction on the ground that such presidential electors selected at said Huron convention were not and are not Republicans, and that their selection and the placing of their names upon the official ballots in the regular Republican column results in a fraud upon plaintiff and all other Republican voters of this state who desire to vote for President Taft by means of the regular Republican ticket. Defendants have demurred, and also moved to quash plaintiff's petition on the ground that the same does not state facts sufficient to warrant the injunction relief demanded by plaintiff.

[1]   It is the contention, among others, of defendants that as no other Republican, or Taft, electors have been nominated whose names might in any manner appear on the regular Republican ticket in the Republican column, plaintiff would be in no different or better position if the injunction were granted than he is now, in so far as his said political right to vote for President Taft on the regular ticket is concerned. We are of the opinion that this contention of defendants is well taken. Plaintiff is not a candidate himself for presidential elector, or for any other office affected by the action of the Huron convention. The specific right which plaintiff claims will be violated and invaded is that of voting, or the opportunity of voting, for President Taft by means of the regular Republican ticket on the official ballots to be used at the November election. The only effect of the injunction, if granted, would be to prevent the names of these electors appearing in the Republican column in the Republican ticket on the official ballots, and would

accomplish nothing further than to leave a vacancy in the Republican ticket on the official ballots as to Republican nominees for presidential electors, and would in no manner protect or operate to enforce or secure to plaintiff, or any other Republican so situated, the right or opportunity to vote for President Taft by means of the regular Republican ticket on the official ballots.

[2] It seems to be generally held that the applicant for an injunction has the burden of showing that he would in some manner be injured or deprived of some lawful right without the aid of such injunction, and that by the granting of such injunction he would obtain the deired relief. Section 197, Code Civ. Pr. It is another general rule or principle of law that courts should never be required to perform idle or useless acts.

[3] The granting of the injunction, as prayed for by plaintiff, under the circumstances of this case, and in view of the present situation existing in this state, with reference to the nominaton for Republican presidential electors, of which this court will take judicial notice, would be an empty and idle act in so far as it would affect the right or opportunity of plaintiff, or any other Republican so situated, to vote for President Taft by means of the regular Republican ticket on the official ballots. On this ground we are therefore of the opinion that the showing made by plaintiff is not sufficient to empower the court to grant the prayed for injunction.

[4] Another contention of plaintiff is that chapter 201, Session Laws of 1911, commonly known as the "Richards Primary Law," is now in full force and effect as a law of this state. We are of the opinion that this contention is not tenable. We are of the opinion that this statute was never passed as or for the purpose of becoming a law, but only for the purpose of being submitted to a vote of the people under the initiative and referendum, as conclusively appears from the title of the act itself. It is contended that, because this act contains an emergency clause, it was not therefore submittable to a vote of the people under the referendum. If this act had, in the first instance, been passed as a law intended to take effect immediately upon its passage and approval, and a referendum petition thereon seeking to submit said law to a vote of the people had been duly filed, then this contention of plaintiff would have been applicable, but, not having been so passed, the

emergency clause thereof is nothing more than ineffectual surplusage.

[5] Some of our associates contend that the injunction prayed for by plaintiff should be granted on the ground that this is an ex rel. action maintainable by the Attorney General of the state on behalf of the people of the state, and that it is the people of the state who are injured by the names of the defendants, nominees for presidential electors, appearing on the official ballots in the Republican column, and, on account of the allegations contained in plaintiff's petition, that the Attorney General has refused to institute this action in the name of the people of the state plaintiff's demand for injunction should be granted. Neither plaintiff nor his counsel have presented or argued any such contention or question, nevertheless, we are of the opinion that this contention is also untenable. Whether this action be maintainable by the Attorney General on behalf of the state, or by private individuals as the members of a political party, does not relieve the party plaintiff, whoever it may be, from making out a good and proper case or cause for injunction under the rules of equity applicable to the granting of such relief. Again, we cannot concur in the view that this is a cause properly maintainable by the Attorney General on behalf of the people of this state. We are of the opinion that neither a political party nor any considerable number of the members thereof constitute the people of this state for the purpose of seeking relief by injunction such as demanded in the petition in this case. Plaintiff in his petition, in substance, states that he is a Republican voter and elector of this state who desires to vote for President Taft, and that this action is brought by himself as such voter and elector and also on behalf of all other Republican voters so situated, and that he is injured and defrauded of his said right to so vote by reason of the presence of the names of defendants, electors, appearing on the regular Republican ticket. Conceding that plaintiff has legal capacity to sue and maintain this action as a party plaintiff for himself and other Republican voters similar situated, still he must show that he and all others so similarly situated, would be benefitted by the granting of said injunction by riving him the right or opportunity of which he claims to be so deprived by defendants. Plaintiff by the very allegations of his petition is not seeking relief on behalf of the whole people of the state or in

which the whole people of the state might be interested, but only as an elector who desires to vote in a particular manner by means of a particular ticket. We are of the opinion that the case of State ex rel. McCue v. Blaisdell, 18 N. D. 55, 118 N. W. 141, 24 L. R. A. (N. S.) 465, 138 Am. St. Rep. 741, cited by our associates, has no possible application to this case. In that case a voter and citizen of North Dakota brought a similar action to contest the constitutionalty of the North Dakota primary law in relation to the preferential vote for the office of United States Senator. There can be but little question but what the issue in that case was a public one affecting the whole people of the state. In the case at bar the constitutionality of the primary law is not assailed by plaintiff, but the relief which he demands is based on the alleged fraudulent action of a majority of the delegates to the Huron convention in nominating persons claimed by plaintiff not to be Republicans at the present time, and therefore asks an injunction to prevent the names of those chosen by said convention as nominees for presidential electors appearing on the regular Republican ticket. The Republican party of this state by and through its regular organization is not here asking for such relief; neither is it shown that the regular officers or committeemen or any of them of the Republican party have ever refused to institute such proceedings, or that any of them even desire such proceeding. No other candidates for presidential electors claiming to be Republicans are asking to be substituted in place of defendants on the official ballots, and neither is palintiff asking to have any other Republican nominees so substituted. Therefore we are clearly of the opinion that the relief sought in this action by virtue of the allegations contained in plaintiff's petition is not of such a public nature as to give the whole people of the state a public interest therein, and is not maintainable in the name of the people of the state.

The views we have expressed render it unnecessary to consider or pass upon other questions presented by the record and argued by counsel.

The demurrer of defendant may be sustained and the application for injunction denied.

HANEY, J. (dissenting). It is stated in the complaint that this proceeding is instituted by "the plaintiff" on his own behalf and also on behalf of all other citizens of the United States and of

this state, who are members of the Republican party and similarly situated: that the "plaintiff" is an elector of this state qualified and entitled to vote for presidential electors at the coming general election in this state: that the Atorney General was requesed o institute the proceeding; and that he has refused so to do. In my opinion an eelctor, upon the refusal of the Attorney General to prosecute, ma ymaintain a proceedin ginvolving questions pertaining to the sovereignty of the state, its franchises and prerogatives, and the liberties of its people, in this court, in the name of the state. In such a proceeding, the state, not the elector, is the plaintiff, and the latter's interest, other than as an elector, is immaterial. In other words, in such a case, whether on the relation of the Attorney General or an elector, the Attorney General having declined to act, it is wholly immaterial what effect, if any, the result of the proceeding may have upon the relator. State v. Blaisdell, 18 N. D. 55, 118 N. W. 141, 24 L. R. A. (N. S.) 465, 138 Am. St. Rep. 741; Everitt v. Board, 1 S. D. 365, 47 N. W. 296. The distinction between an action or proceeding instituted in the name of the state on the relation of the Attorney General or in the name of the state on the relation of an elector, the Attorney General having refused to act, and an action instituted by an individual to enforce or protect a right peculiar to himself and others, similarly situated, was not considered in State ex rel. Cranmer v. Thorson, 9 S. D. 152, 68 N. W. 202, 33 L. R. A. 582. There was no allegation in the complaint in that case regarding the refusal of the Attorney General to prosecute the proceeding. In the title of that case, Cranmer, not the state, should have been named as "plaintiff." But, no objection appearing to have been raised, the proceeding was regarded as the suit of a private person governed by the rules applicable to ordinary actions in equity. Therefore, that case is not an authority which should govern the case at bar, if the complaint discloses a state of facts involving questions pertaining to the sovereignty of the state, its franchises, and prerogatives and the liberties of its people. In my opinion the complaint, liberally construed, with a view of substantial justice, as it should be discloses such a state of facts, notwithstanding the superfluous declaration that the suit is brought on behalf of the relator, erroneously designated as "plaintiff" and others similarly situated. Therefore, with profound respect for the judgment of my learned

Associates, I dissent from the conclusion that the demurrers to the complaint should be sustained on the ground that the relief sought would be of no benefit to the relator.

In view of the conclusions reached by a majority of the court regarding the interest of the relator, no useful purpose would be served by an extended discussion of other phases of the case. It is sufficient to state that, in my opinion, this court is authorized by the onstitution and statutes of this state and its former decisions to determine in this proceeding whether the names of the defendants, other than the Secretary of State, should appear as candidates for presidential electors in the Republican column on the official ballot which every elector of the state will be required to use if he votes at the coming general election; that whether such names shall so appear is a legal question affecting the legal rights of every elector of this state, regardless of party affiliation; that, upon the facts as they stand admitted for the purposes of defendant's demurrers and "motion to quash," such names should not so appear on such ballot; and that the Secretary of State should be restrained from so certifying the same. These views necessarily lead to the conclusion that the demurrers and "motion to quash" should be overruled, without reference to the Richards proposed primary law, which, in my opinion, did not go into effect by operation of the emergency clause contained in the measure as submitted by the Legislature.

CORSON, J. (dissenting). I fully concur in the dissenting opinion of my Associate, Judge Haney; but, in view of the importance of the case, I deem it proper to add thereto some further reasons why this court should retain jurisdiction of the case, and grant the injunction therein prayed for restraining and enjoining the Secretary of State from placing the candidates for presidential electors on the ticket under the head of the Republican ticket. The law of this state provides that an elector may, if he desires to vote the entire ticket of his party, make a cross in the circle at the head of the ticket of his party, and thereby vote for all candidates whose names appear on such ticket. In case, therefore, the candidates for presidential electors selected by the convention at Huron on July 2d are in favor of a president and vice president in opposition to the nominees of the regular Republican convention held in Chicago in June, 1912, a cross in the circle at the head of

the ticket of the Republican party would constitute a vote on the part of the elector for the entire ticket, and necessarily be a vote in favor of electors in opposition to the regular nomination by the national Republican convention. Hence, every Republican elector, in order to avoid voting for the candidates for Republican elec--tors in opposition to the candidates of the national Republican convention, will be compelled to omit the cross in the circle at the head of the party ticket, and make a cross in the circle at the left of the name of each candidate for whom he desires to vote. He will, therefore, be denied a very important right, and be compelled to perform much additional labor in preparing his ballot on the day of election.

Again, the insertion of the names of the candidates for presidential electors proposed under the head of the Republican party will necessarily result in obtaining the votes of a large number of Republican electors who are favorable to the candidates selected by the Republican national convention, but who by inadvertence or mistake will as they usually do make a cross in the circle at the head of their party ticket, and thereby appear to vote for the candidates nominated by "the progressive" party at its Chicago convention held in August, 1912, which would in effect result in perpetrating a fraud upon such electors.

Again, the candidates sought to be placed upon the ticket under the head of the name of the Republican party for presidential electors having declared, as it is alleged in the complaint, that they will not vote for the candidates selected by the Republican national convention at Chicago, have no right to a place upon the party ticket under the name of the Republican party from the mere fact that they claim to have been selected as Republicans at the primary election. It may be true that the delegates to that convention were selected at the primary election in June as delegates to the state convention as members of the Republican party; but it appears from the complaint that after their said election as delegates to the state convention they seceded from the national Republican party and joined what is dominated the "Progressive party," which subsequently in August of the present year nominated candidates for president and vice president of the United States in opposition to the candidates of the national Republican convention in June, and they had no right, therefore, to continue to act as members of the

Republican party in the Huron convention of July 2d, and the ticket so selected by them for presidential electors should have no place on the ticket under the head of the Republican party ticket.

As an illustration of the position of those delegates favorable to the new progressive party, let us suppose that a majority of the delegates to the state convention as Republicans had prior to the convention in Huron of July 2d, concluded to support the Socialist party, whose presidential nominee is Mr. Debs, and had in that convention selected candidates for presidential electors favorable to the election of the candidates for president and vice president of the Socialist party; would it be contended by any one that the socialist ticket thus selected should be placed as a Republican party ticket on the ballot? I think there could scarcely be found a person in the state who would approve of such a proceeding. Again, suppose as an illustration that a majority of the delegates selected at the primary in June as Republicans had after their election and the holding of the national Republican convention, being dissatisfied with the nominees of that convention, decided that they would support the Democratic ticket, and had, therefore, selected the candidates for presidential electors favorable to the election of the candidates of the democratic party at their national convention, would any one claim that such candidates should go upon the Republican party ticket on the ballot? We apprehend that there would be no difference of opinion among the people of the state as to the propriety of excluding such candidates from being placed upon the Republican party ticket. As I view this situation, there is no distinction between the cases I have supposed and the case before us under the complaint which for the purposes of the demurrer must be regarded as true. In my opinion, therefore, it is the duty of this court to enjoin the Secretary of State from presenting the names of the candidates selected at the Huron convention to be placed upon the Republican party ticket.

It is claimed by the defendants, and seems to be the view of the majority of the court, that in view of the fact that the relator and the other members of the Republican party in the state could not if those candidates were excluded from their party ticket vote for the candidates nominated by the national Republican convention for president and vice president, therefore the relator and the other members of the Republican party of the state would not be

prejudiced by placing the names of the candidates selected by the Huron convention for presidential electors upon the Republican party ticket. But I think I have shown that this contention is untenable, and that the Republican party as such has a right to the protection of the court against there being placed upon their ticket candidates representing a party to which the Republican party is opposed.

In expressing these views I do not wish to be understood as indicating my own private opinions as to the merits or demerits of the nominees of the respective conventions held in June and August of the present year, as I am considering the case as presented by the relator, which, as before stated, for the purposes of the demurer must be taken as true. The relator and those similarly situated would have, perhaps, been in a little more favorable position in this court had the Republican delegates withdrawn from the convention and organized another convention and selected their candidates for presidential electors when it became evident that a majority of the members of the convention had concluded to support the candidates of a party in opposition to the national Republican convention, and selected a list of electors favorable to the election of the nominees of the Republican national convention held in June, but the fact that they inadvertently omitted to withdraw from the convention and to select such a list of candidates does not in my opinion affect the right of the relator and the members of the Republican party of the state to have excluded from their ticket the names of the candidates tha were selected by the Huron convention.

I have not deemed it necessary to cite any authorities in sustain the view I have herein expressed as the decisions upon election cases are so numerous and based upon so many different statutes that it is difficult to extract therefrom any general rule applicable to this subject. The law of this state, however, under the Australian ballot system and the primary system enacted by the Legislature, has placed the primary election and conventions held thereunder as well as the general election under the laws of the state, and in my opinion it is the duty of this court to protect the various political parties in the righs thus conferred upon them by the statute law, and to enforce the observance of those laws upon all parties, and to protect the rights of the individual elec-

tors in the exercise of their elective privileges, and to protect the rights of parties in the exercise of the duties devolved upon them by the legislative enactments, and to prevent any one of the political parties in this state from adopting any mehod that may prevent the individual voter from exercising any rights granted him by the Constitution of this state and the laws enacted thereunder.

Whether or not the candidates for presidential electors selected by the Huron convention may now be placed upon the ballot as candidates of the "Progressive party" by petition or otherwise is not now before us, and therefore upon that subject I express no opinion.

In conclusion my judgment is that this court should issue an injuction enjoining and restraining the Secretary of State from certifying to the county auditors the names of the proposed presidential electors selected at the Huron convention upon the Republican party ticket.