CHARLES E. BELKNAP v. THE BOARD OF CANVASSERS
OF IONIA COUNTY.

*Elections—Recount of ballots—Congressman—Certificate of election—Mandamus.*

1. Act No. 208, Laws of 1887 (3 How. Stat. § 234a), which provides for the correction of frauds and mistakes in the canvass and returns made by inspectors of election, does not apply to the office of Congressman.

2. Where the board of canvassers of a county have canvassed the votes cast therein for Congressman from the returns of the inspectors as corrected by a recount had under the statute cited, *mandamus* will lie to compel them to reconvene, and recanvass the votes according to the original returns, and report the result to the Secretary of State.

*Mandamus.*   Argued January 3, 1893.   Granted February 3, 1893.

Relator applied for *mandamus* to compel respondent to reconvene, and canvass the votes cast for the office of Representative in Congress from the Fifth district according to the original returns, respondent having assumed, upon the application of relator's opponent, George F. Richardson, to recount the ballots under the provisions of Act No. 208, Laws of 1887.   The facts are stated in the opinion.

*Dwight Goss* and *Taggart, Wolcott & Ganson,* for relator.
*Ellis, Nichols & Miller,* for respondent.

PER CURIAM.   This is an application for a *mandamus* to compel the board of canvassers of Ionia county to reconvene, and canvass the votes cast for petitioner according to the original returns made to the county clerk. The petition sets forth that, according to the original returns made to the several county clerks of the district,

he was elected Representative in the Federal Congress, and the answer does not deny that allegation.

The House of Representatives is made the judge of the election and qualifications of its own members, and it is now well settled that Act No. 208, Laws of 1887 (3 How. Stat. § 234a), under which the recount was had, has no application to such a case. *Weston v. Probate Judge*, 69 Mich. 600; *Naumann v. Board of Canvassers*, 73 Id. 252; *Newton v. Board of Canvassers*, 94 Id. 455; *Wheeler v. Board of Canvassers*, Id. 448; *State v. Canvassers*, 36 Wis. 498; *Keeler v. Robertson*, 27 Mich. 116. It follows that the board of canvassers of Ionia county was wholly without authority in the premises.

The answer sets up that relator filed a petition for a recount in the county of Kent, and that such recount was had, and that, while relator objected to the action of the Ionia county board on the ground that the petition was not filed in time, yet he did not question the power of the board. It is, however, alleged that by the original returns relator was elected. His right, therefore, to a certificate did not depend upon the recount in Kent, and the petition filed in Ionia county was not predicated upon nor rendered necessary by the recount in Kent. Mr. Richardson was in no sense misled or prejudiced by either the recount in Kent or the failure to object to the recount in Ionia, instituted by himself.

It is next urged that, the returns having been made, and the certificate having been issued, the relator's only remedy is a contest in the House of Representatives. The point is ruled by *Roemer v. Board of Canvassers*, 90 Mich. 27.

It is further insisted that, inasmuch as the answer alleges that the recount in Ionia county was fair and impartial, and resulted in such an increase of the vote for Mr. Richardson as to entitle him to the certificate of elec-

tion, it would be unjust to set aside such recount. In *Maynard v. Board of Canvassers*, 84 Mich. 228, it was held that where the facts are not in dispute, and it appears that the relator is not entitled to the office, the Court will not compel the issue of a certificate by *mandamus*. In the present case the petition alleges unfairness and partiality in the recount, and a large number of copies of ballots, certain of which were counted for Mr. Richardson, and others of which were evidently cast for relator, and rejected by the committee, are attached to the petition.

A comparison of these copies negatives any presumption of fairness and impartiality that might otherwise exist. While the answer of a majority of the board contains a general denial of the allegations of unfairness and partiality, and contains a general allegation that the alleged copies of the ballots are not true copies, yet said answer does not attempt to indicate in what respect such copies differ from the originals. Two answers are presented; one signed and sworn to by twelve members of the board, and another signed and sworn to by eight members. The latter admits the allegations of fraud, unfairness, and partiality, and that the copies of the ballots are true copies, while the former denies the allegations of fraud, unfairness, and partiality, and alleges that the copies are not true copies. A determination of the essential facts in this controversy must depend upon a re-examination by the proper tribunal of the original ballots. It cannot be said, upon the papers before us, that the fairness and impartiality of this recount are undisputed, and therefore the case does not come within the rule laid down in the Maynard case above cited.

The respondent must be held to have acted without authority. It will be the duty of the board to reconvene, and recanvass the votes of Ionia county according to the original returns, and to report the result to the Secretary

of State. It will then be the duty of the State Board of Canvassers to reconvene, and recanvass the vote for Congressman in the Fifth district, and issue a certificate accordingly. In the mean time, Mr. Richardson has his remedy, should he desire a recanvass of the Kent county vote according to the original returns in that county.

The *mandamus* will therefore issue as indicated, without costs.

HOOKER, C. J., took no part in the decision.