March 29,
  1921.

## OPINION OF THE JUSTICES.

The legislature has no power to authorize the exercise of the right of suffrage, at the biennial elections of state officers, by electors who are not present at the polls either because of absence from the municipality in which the election is held or because of physical disability.

The foregoing limitation has no application to legislation providing for the election of presidential electors.

The duty of the supreme court to furnish advisory opinions is not limited to questions which may be adjudicated by the courts of the state.

The validity of an election of a senator or a representative in congress which depends upon votes given by proxy is so doubtful that the court is unable to advise that legislation so providing would be valid.

*To the Supreme Court of the State of New Hampshire.*

Honored Sirs:

At the direction of the House of Representatives, now sitting at Concord in our State of New Hampshire, I submit herewith copies of a resolution adopted March 16, 1921, relating to Senate Bill No. 1, which pertains to Absentee Voters, and I respectfully request this Honorable Court at an early date to render its opinion upon the two questions contained in said resolution.

Respectfully,

FRED. A. JONES,

March 16, 1921.                    *Speaker, House of Representatives.*

Resolved: That the Speaker of the House be and hereby is directed to obtain from the justices of the supreme court at the earliest possible date their opinions upon the following questions:

1. Does the annexed bill now pending in the house of representatives contain any provisions in violation of the state or federal constitutions?

2. If the annexed bill contains any provisions in violation of the state or federal constitutions, can persons who on the day of the biennial election are absent from the towns in which they are qualified voters, be authorized by the legislature to vote, so that their votes will be valid and effective in the same way as though they had voted at the polls in person?

### AN ACT

To Permit Absent Voters and Voters who by reason of Physical Disability are Unable to Vote in Person to Vote at Biennial Elections.

Be it enacted by the Senate and House of Representatives in General Court convened:

SECT. 1. Any voter who on the day of the biennial election is absent from the city, town, or district, in which he is qualified to vote, or who by reason of physicial disability is unable to vote in person, may vote in accordance with the provisions hereinafter set forth.

SECT. 2. Prior to each biennial election the Secretary of State shall prepare in such quantities as he may deem necessary the following papers:

(a) Official absent voting ballots, similar in all respects to the official ballot to be used at such election, but printed on paper differing in color from that used for official or sample ballots.

(b) Blank forms of application for such ballots, worded as follows:
I,                  · hereby apply for an official absent voting ballot. I am a legal resident of the city of          in Ward
or town of          , a duly qualified voter, and, as I believe, entitled to vote at the next biennial election. Mail absent voter's ballot to
          (Street and Number),                    (City or Town).
                    (Signature)

(In case of a voter physically disabled, the applicant will fill out the following):
On account of physical disability I am unable to vote in person.
                    (Signature)

(If in the service of the United States, the applicant may fill out the following):
I am in the military — naval — marine — government service of the United States, and my rank or official position is
(Date)                    (Signature)

We, the undersigned, a majority of the registrars of voters or inspectors or supervisors of the check lists of the
of                    , hereby certify that the above signature, to the best of our knowledge and belief, appears to be genuine, and that we believe said                    is a duly qualified voter in said ward          city or town of          . Registrars of voters or inspectors or supervisors of the check lists of the
of

(c) Envelopes of sufficient size to contain the ballots specified in clause (a), bearing the following: (This envelope contains an absent voter's ballot).

Envelopes of sufficient size to contain the ballots specified in clause (a) on which shall be printed the following:

(Affidavit)

State of

County of            , ss.

I,                    , do solemnly swear that I am a qualified voter in the city or town of            , New Hampshire, in ward          , that there is at least one city or town intervening between the city or town in which I am a qualified voter and the place in which I now am; that I have carefully read the instructions forwarded to me with the ballot herein enclosed, and that I have marked, enclosed and sealed the within ballot as stated hereon by the person taking my oath.

(Signature)

(In the case of a voter physically disabled, the applicant will fill out the following):

State of

County of          , ss.

I,                    , do solemnly swear that I am a qualified voter in the city or town of            , New Hampshire, in ward            ; that on account of physical disability I am unable to vote in person; that I have carefully read the instructions forwarded to me with the ballot herein enclosed, and that I have marked enclosed and sealed the within ballot as stated hereon by the person taking my oath.

(Signature)

Subscribed and sworn to before me by the above affiant, personally known to me, this            day of          , 19  , in the city or town of          , state of          , and I hereby certify that when I was alone with the affiant, the affiant in my presence marked the ballot without my seeing how he marked it, after which he sealed said ballot in this envelope. I had no communication with the affiant as to how he was to vote.

(Seal, if any)        Name

                Residence

                Official title or military or naval rank

(Physician's certificate)

I,                    of (address)

hereby certify that I am the attending physician of the affiant, that

I have made a careful examination and am satisfied that he is unable by reason of physical disability to vote in person.

(Signature)

(d) Envelopes of size sufficient to contain the preceding, addressed to the clerks of the several cities and towns within the state, upon which shall be printed, "Enclosed is the ballot of an absent voter," and at the top thereof blank spaces for the name, address and voting place of the sender, with the words "name," "address," and "ward" appropriately printed thereon.

(e) Copies of this act, with such explanatory matter and instructions as the secretary of state, with the approval of the attorney-general, shall deem appropriate to carry into effect the purposes of this act.

SECT. 3. The secretary of state shall retain for his own use so many of the papers provided for in the preceding section as he may deem sufficient, and shall supply each city and town clerk in the state with as many of them as he may deem necessary.

SECT. 4. The papers mentioned in clauses (b) and (e) of section two shall, as soon as they can be prepared, be mailed or delivered to any person who applies therefor to the secretary of state or to any city or town clerk. All other papers described in said section shall be mailed or delivered by city and town clerks, postage prepaid, to all voters who seasonably file the application set forth in clause (b) of said section.

SECT. 5. The secretary of state shall obtain as soon as practicable the names, addresses, official rank or title, and the places where they are entitled to vote, of all qualified voters in the military or naval service or marine corps of the United States, or in the civil or official service of the United States or of this state, who by reason of such service are absent from the state. The adjutant general and all city and town officials are hereby required to give him all reasonable assistance that he may request for this purpose. To such voters he shall forward as soon as practicable the papers mentioned in clauses (a), (c), (d) and (e) of section two.

SECT. 6. When an application for an official absent voting ballot is received by the clerk of a city or town, whether from the voters directly or through the secretary of state, it shall be transmitted by him to the registrars of voters or inspectors or supervisors of check lists of such city or town, who shall examine the same and, if they believe the signature thereon to be genuine and the person executing

the signature to be a duly qualified voter, shall execute the certificate thereon and return the application to said clerk. The registrars of voters or inspectors, or supervisors of check lists shall cause to be placed on the voting list, opposite the name of each person registered as an absent voter, the letters in capitals A. V. If they find the person signing the application not to be a duly qualified voter, the city or town clerk shall send him written notice to that effect and shall preserve the application until the time set by law for the destruction of ballots cast in the coming election, at which time said application shall also be destroyed. The clerk shall keep lists of the names and addresses, arranged by voting places, of all voters filing applications for absent voting ballots, and shall post copies of the same for public inspection.

SECT. 7. A voter who has executed and filed an application for an official absent voting ballot with the clerk of the city or town in which he is a qualified voter, after his application is certified as provided in the preceding section or in the case of a voter coming under the provisions of section 5, may vote by mailing or causing to be delivered to such city or town clerk an official absent voting ballot, prepared under the provisions of section two. He shall mark said ballot in the presence of an official authorized by law to administer oaths, and of no other person, and, except in the case of a voter physically disabled, in a city or town which is separated by at least one city or town from the city or town wherein the voter is registered. He shall deliver the official ballot to said official, who shall satisfy himself that it is unmarked and the voter shall not allow said official to see how he marks it. Said official shall hold no communication with the voter, nor he with said official, as to how he is to vote. After marking the ballot, the voter shall enclose and seal the same in the envelope provided for in clause (c) of section two. He shall then execute before said official the affidavit on said envelope as set forth in said clause (c), and shall enclose and seal the envelope containing the ballot in the envelope provided for in clause (d) of section two, endorse thereon his name, address and voting place, and shall then mail the envelope, postage prepaid, or cause it to be delivered.

SECT. 8. Upon receipt of an envelope purporting to contain an official absent voting ballot (with the exception of ballots from voters coming under the provisions of section 5), the clerk of the city or town shall attach thereto the application for an official absent voting ballot executed by the voter whose name appears

thereon and certified by the registrars of voters or inspectors or supervisors of the check lists. All such envelopes shall be preserved unopened. Upon election day before the hour for the closing of the polls the said clerk shall deliver all envelopes received by him to the moderators in the several voting precincts in which the voters named therein assert the right to vote, taking a receipt from the moderator therefor. No absent voter's ballot shall be cast or counted unless it be delivered to the moderator at the proper polling place prior to the closing of the polls on the day of the election.

SECT. 9.  Immediately after the closing of the polls, and before the ballots cast have been removed from the ballot box, the moderator in each polling place shall open all envelopes delivered to him under the provisions of the preceding section, and shall compare the signatures on the envelopes therein enclosed with the signatures on the applications attached thereto, except in the case of ballots prepared under the provisions of section twelve, and shall examine the affidavits. If the affidavits are properly executed and if the affidavits sufficiently disclose that the ballots were executed and mailed or delivered in accordance with the provisions of this act, and if the signatures on the affidavits appear to be executed by the same persons who signed the applications, and to be the signatures of duly qualified voters who have not voted at the election, he shall make public announcement of the names of the absent voters, open the envelopes in such manner as not to destroy the affidavits thereon, take out the ballots without unfolding them or permitting them to be opened or examined, and, after checking the names of the absent voters on the voting list, shall deposit the ballots in the ballot box. If he finds an envelope to bear an affidavit improperly executed, or not signed by the person who signed the accompanying application, or if the voter whose name appears thereon is not a qualified voter or has voted in person, he shall not open the envelope, but shall mark across the face thereof, "Rejected as defective," "Rejected as not a voter," "Voted in person," as the case may be. All envelopes, opened or unopened, shall be retained with the ballots cast at the election, and preserved and destroyed in the manner provided by law for the retention, preservation or destruction of official ballots.

SECT. 10.  All absent voter ballots received shall be subject to challenge prior to removal from their envelopes for non-compliance with this act or for any reason allowed by applicable provisions of existing law, and if challenged there shall be endorsed on the envelope thereof by the moderator, the word "Challenged" with the

name and address of the voter who makes the challenge. If the moderator is satisfied the challenge is well grounded the ballot shall not be removed from its envelope and shall not be counted but shall be preserved with the other ballots; otherwise it shall be opened and endorsed with the name of the voter by the moderator and cast as other ballots.

SECT. 11. No ballot transmitted under the provisions of this act shall be rejected for any immaterial addition, omission or irregularity in the preparation or execution of any writing or affidavit required herein, nor by reason of any variation between absent voters' ballots and ballots in use by voters present.

SECT. 12. An absent voter who is unable to mark his ballot may have it marked for him by a notary public, a justice of the peace, or a sworn election official, who shall add in writing to the jurat a statement of the fact that the voter is unable to write, stating the reason therefor, and shall sign the voter's name on both envelopes.

SECT. 13. All envelopes received by clerks of cities and towns after the closing of the polls on the day of election shall be retained by them unopened until the time set by law for the destruction of ballots cast at the state election, at which time the envelopes shall likewise be destroyed, unopened and unexamined.

SECT. 14. Nothing herein contained shall prevent a voter who has mailed or delivered a ballot under the provisions hereof from voting in person. No ballot mailed or delivered under the provisions hereof shall be counted if the officers charged with the duty of counting the same are cognizant of the fact that the voter has died prior to the opening of the polls on the day of election.

SECT. 15. Any soldier, sailor or marine voting as herein permitted, may substitute for the required jurat and transmit with the sealed ballot, a written statement in such form as the secretary of state shall prescribe, setting forth the facts required, made by any one of his superior officers of a rank in the army or marine corps higher than first lieutenant, and in the navy higher than lieutenant of the second grade.

SECT. 16. The secretary of state shall prepare for the use of election officials, city and town clerks and registrars of voters and inspectors and supervisors of the check lists such printed information and instructions, subject to approval by the attorney-general, as he may deem proper to facilitate the operation of this act. Such printed matter shall be transmitted to said officials prior to each state election. The secretary of state is further authorized to pre-

pare and distribute subject to like approval, such general information relative to this act as he may deem expedient.

SECT. 17. Any justice of the superior court shall have jurisdiction in equity upon such notice as he may order, to require the certification of any application for an absent voting ballot which the registrars of voters or inspectors or supervisors of the check lists have unreasonably refused to certify; the superior court shall have jurisdiction to order the counting of any ballots improperly rejected, or to enjoin the counting of any ballot which cannot reasonably be identified as the ballot of a person lawfully entitled to vote as herein provided, or which was not cast in accordance with the provisions of this act, provided that no proceeding under this act shall be begun later than the date fixed by law for the final canvass of any votes cast under this act for candidates for state offices.

SECT. 18. Whoever, prior to the closing of the polls upon election day shall show or exhibit an unsealed absent voter's ballot to any person other than an official authorized to administer the oath required by section seven of this act, or shall use an absent voter's ballot for any purpose except to vote the same, shall be punished by a fine of not more than one hundred dollars; provided, however, that this provision shall not apply to any person engaged in printing or distributing or otherwise dealing with said ballots according to law, and whoever, not being entitled to vote under the provisions of this act votes or attempts to vote under the provisions hereof, or whoever, being entitled to vote under the provisions of this act, knowingly votes or attempts to vote in violation of the terms thereof, or whoever being an official trusted with the execution of this act wilfully violates any provision thereof, or any physician issuing a false or fraudulent medical certificate, shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year or both.

SECT. 19. Chapter 95 of the Session Laws of 1917 and all amendments thereto and all acts and parts of acts inconsistent with this act are hereby repealed and this act shall take effect upon its passage.

*To the House of Representatives:*

The pending bill which is submitted for our consideration appears to be modeled upon a recent Massachusetts statute. Laws Mass., 1919, c. 289. The Massachusetts act seems to have been adopted under a recent amendment of the constitution of that state. "The

General Court shall have power to provide by law for voting by qualified voters who, at the time of the election, are absent from the city or town of which they are inhabitants in the choice of any officer to be elected or upon any question submitted at such election." Art. XLV, Amendment, Const. Mass.

The purpose of the proposed legislation is to authorize the exercise of the right of suffrage at our biennial elections by electors who are not present at the polls either because of absence from the municipality in which the election is held or because of physical disability. In the latter provision the bill goes beyond the Massachusetts act or the constitutional amendment by which the legislation of that commonwealth is authorized.

The inquiry submitted is whether in the absence of power expressly given by constitutional amendment the legislature has power to provide as proposed. That such power does not exist was settled nearly fifty years ago not only in this state but in others with similar constitutional provisions as to all offices created by the several state constitutions.

In June, 1863, an act was pending in the legislature entitled "An act to secure the right of suffrage to the qualified voters of this state engaged in the military or naval service of their country," and the opinions of the justices were required as to its constitutionality. This act is identical in principle with the law now proposed. It authorized the exercise of the right of suffrage by electors who are not present at the polls; provided for prior preparation of the ballot by the voter and the presentation of the ballot to the moderator in the meeting by an attorney duly appointed by the voter, while the proposed act requires the ballot similarly previously prepared by the voter to be presented to the moderator by the town clerk, to whom the ballots are to be transmitted by the voters. This law the justices advised was beyond the power of the legislature because the constitution as they construed it required "that the right of voting shall be exercised by the voter in person at the meetings duly held for the purpose in the places of the State pointed out by the Constitution, and at times in accordance with its provisions." 44 N. H. 633, 636. For other authorities reaching the same result, see *Opinion of the Justices*, 30 Conn. 591; 37 Vt. 665; *Chase* v. *Miller*, 41 Pa. St. 403; *Day* v. *Jones*, 31 Cal. 261; *Bourland* v. *Hildreth*, 26 Cal. 161; *People* v. *Blodgett*, 13 Mich. 127. In *Morrison* v. *Springer*, 15 Iowa 304, sustaining a statute for the same purpose but with different provisions, the court expressly approve the opinions expressed by

the justices of this court. Since 1863 it has been understood (as said by *Ladd*, J., in *Copp* v. *Henniker*, 55 N. H. 179, 193) "that the right of suffrage, established by the constitution, could not be exercised by proxy." We are not able to answer the considerations by which the conclusions of the justices were supported in 1863. Counsel who have appeared before us in behalf of the proponents of the bill concede that it is beyond legislative power as to state officers. We therefore are constrained to advise the house of representatives that the right of suffrage given by the constitution cannot be exercised by proxy, *i. e.*, by electors not present at the meeting. The occasion for legislation of this character in 1863 was the absence of many voters in the service of the army or navy of the United States during the Civil war. The difficulty was met in some states by constitutional amendment. Similar amendments have since been adopted in other states. Bulletin Mass. Const. Convention, Vol. 2, *pp.* 213, 214, 219–223.

Most of the statutes adopted during the war, instead of providing for voting by proxy at the place where the election was regularly held, provided for special elections at the places where the electors in the service of the federal government might be. Such a law was here adopted in 1864 applicable, however, only to presidential electors and representatives in congress. Laws 1864, *c.* 4030. The reasoning of the justices in 1863 in some portions of their opinion is apparently fatal to this law also, but with the statement that the election of federal officers was not called to their attention the justices upon inquiry from the senate expressed opinions in favor of the validity of the law of 1864. 45 N. H. 595; 37 Vt. 665. There is nothing in the opinion, however, expressing doubt as to the view previously expressed as to the constitutional requirements for the election of state officers. The question was as to the place where the election must be held, not whether the elector's vote could be cast in his absence.

At each of the biennial elections to which the proposed bill applies, a representative in congress is elected and presidential electors and a senator in congress may be. The legislature may desire to consider the advisability of legislation of this character applying to these officers alone and we have considered this question also. This is a question not of state but of federal law, and authority must be found, if it exists, in the provisions of the federal constitution. "Each state shall appoint, in such manner as the legislature thereof may direct" electors of president and vice-president. "The Con-

gress may determine the time of choosing the electors." Const. U. S., Art. II, s. 1. "The electors of President and Vice-President shall be appointed in each State, on the Tuesday next after the first Monday in November in every fourth year." Rev. Stat. U. S., s. 131. As the manner of making the appointment is left to the legislature of each state there can be no constitutional objection to the scheme now proposed. The power of the legislature as to this matter is discussed in the opinion of the justices, 45 N. H. 599–601. Holding the opinions there expressed, we advise the legislature that the provisions of the proposed bill so far as applicable to the choice of presidential electors, if enacted, would be a valid exercise of legislative power.

As to representatives and senators in congress the question is not so clear. "The House of Representatives shall be composed of members chosen every second year by the people of the several states; and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature." U. S. Const., Art. I, s. 2. "The Senate of the United States shall be composed of two Senators from each state elected by the people thereof for six years; and each Senator shall have one vote. The electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature." Art. XVII, Amendments U. S. Const.

"The times, places, and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof; but the congress may at any time, by law, make or alter such regulations, except as to the places of choosing Senators." Const., U. S., Art. I, s. 4.

"All votes for Representatives in Congress must be by written or printed ballot; or voting machine the use of which has been duly authorized by the State law; and all votes received or recorded contrary to this section shall be of no effect." Rev. Stat., U. S., s. 27; Laws, Feb. 14, 1899, c. 154; 30 U. S. Stat. 836; Comp. Stat., s. 27.

The advice given in 1864 (45 N. H. 595) that voting for representatives in congress could be authorized at places other than those in which the voter was by the state constitution qualified to vote was based upon the proposition that the place where a voter was qualified to vote was no part of his qualifications as an elector. Giving a narrow construction to the term, qualification, it might be concluded that the requirement of the state constitution that the voter should present his vote in person related merely to the manner

of voting and not to the qualifications of a voter.  But the elector is not capable of voting for members of the most numerous branch of our legislature unless he is physically capable of attending the meeting and is there present in person.  The requirement of the federal constitution that the electors of senators and representatives should possess the qualifications of electors of a class of legislators in the state would seem to imply that only those who by state law were permitted to vote for such legislators should have the right to vote for candidates for the federal offices.  The statute quoted requires representatives in congress to be elected by ballot.  "A ballot may be defined to be a piece of paper, or other suitable material, with the name written or printed upon it of the person to be voted for; and where the suffrages are given in this form, each of the electors, in person, deposits such a vote in a box or other receptacle provided for the purpose, and kept in the custody of the proper officers."  Cush. Leg. Ass., *s.* 103; quoted with approval, Cooley's Const. Lim. (7 *ed.*), *p.* 910.  That at common law in all elections of a public nature every vote must be personally given is a proposition upon which the authorities are uniform.  Authorities cited, 44 N. H. 635; Morawetz, Private Corp., *s.* 486; McCrary, Elections (1 *ed.*), *s.* 48; Paine, Elections, *s.* 462; *Richard's Case,* Clarke & Hall, Cong. El. Cases, *pp.* 95, 99.  Congress has also fixed the day for the election of senators and representatives.  Rev. Stat. U. S., *s.* 25; Act June 4, 1914, *c.* 103, *s.* 1; 38 U. S. Stat., Part I, *p.* 384; Comp. St., *s.* 14a.

If the election is to be held on a certain day, the implication is that the vote must be cast on that day.  The bill before us permits the voter to part with all control over his vote, to vote in short as early before the day of election as he can obtain a ballot.  It seems most probable that congress when it required an election by ballot meant an election where the ballot was presented by the elector in person and we incline to the opinion that the scheme of this act for voting by proxy would not be a valid law if enacted as to the election of representatives and senators in congress.  As each house of congress is judge of the elections and qualifications of its members the question can only be determined by those bodies.  We have not found such a decision.

Although advisory opinions such as we now are giving are not judgments establishing the law, in practice they appear to be relied upon as authority as fully as decisions in litigated cases.  Whenever possible it has been the practice in recent years to hear argument from parties holding opposing views.  The practical result is that

these opinions have in effect the weight of declaratory judgments upon questions within the jurisdiction of the court of which the justices are members. In the opinion in 45 N. H. the fact that the question is one not within the jurisdiction of the judiciary of the state is not referred to. But our duty to advise under the constitution is not limited to questions which may be adjudicated by the courts of the state. *Opinion of the Justices*, 60 N. H. 585. In that case the justices advised as to the legality of the election of a United States senator by the existing legislature, a question which could be finally determined only by the senate.

It is often said that a court will not declare beyond legislative power a law which has been duly enacted unless the conflict with the constitution clearly appears. In the present case, where we are asked to advise as to legislative power in advance of action upon a question not within the jurisdiction of the state, it is clear we cannot safely give advice which might induce affirmative action unless the power clearly exists. We have such doubt as to what might be held by the final authority as to the validity of an election of a senator or representative in congress which depended upon votes given by proxy as now proposed in a state where that method of voting is not permitted by state law that we are unable to advise the legislature that the proposed legislation would be valid. We are not aware of any emergency which requires action by the legislature at this time. Our opinion, if expressed, that the law is valid or invalid in this respect will not decide the question. Whether it is wise to proceed with legislation of at least doubtful validity is a question of expediency determinable only by the legislature. Our duty is performed by stating the legal situation as it exists.

To restate our conclusions: the manner of voting prescribed by the bill is contrary to the state constitution, and its provisions would be invalid as to the election of all state officers; they would be valid as to the election of presidential electors; we are unable to say the provisions would be held valid as to the election of senators and representatives in congress.

FRANK N. PARSONS.
JOHN E. YOUNG.
ROBERT J. PEASLEE.
WILLIAM A. PLUMMER.