Vance HARTKE, Plaintiff,

v.

Richard L. ROUDEBUSH, Samuel J.
Walker, John R. Hammond, Duge
Butler, Defendants,

Theodore Sendak, Attorney General of
Indiana, Intervening Defendant.

No. IP 70-C-694.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Dec. 19, 1970.
Jurisdiction Postponed March 22, 1971.
See 91 S.Ct. 1201.

John J. Dillon, David W. Mernitz and
James L. Tuohy, Indianapolis, Ind., for
plaintiff, Vance Hartke.

Donald A. Schabel and John G. Tinder,
Indianapolis, Ind., for defendant, Richard L. Roudebush.

Theodore L. Sendak, Atty. Gen., and
Wendell C. Hamacher and Patricia J.
Glifford, Deputy Attys. Gen., for the
State of Indiana.

Before STEVENS, Circuit Judge, and
STECKLER, Chief Judge, and DILLIN,
District Judge.

## OPINION

PER CURIAM.

This cause was heard before a three-judge District Court convened pursuant to 28 U.S.C. § 2284, on plaintiff's application for a preliminary injunction to enjoin the operation and enforcement of Chapter 54 of Title 29 of the Indiana Election Code, Burns' Ind.Stat.Ann. § 29-5401 through § 29-5417, upon the ground that the application and operation of such statutes in respect to an election for the office of United States Senator is unconstitutional.

At the general election of November 3, 1970, the plaintiff, Vance Hartke, an incumbent United States Senator for Indiana, and the defendant Richard L.

Roudebush were opposing candidates for Hartke's office. The canvass reflected that Hartke received the highest number of votes cast for such office, and on November 16, 1970, the Secretary of State certified him to the Governor of Indiana as duly elected and the Governor, on December 3, 1970, gave to said candidate a certificate of his election, in the form required by Burns' Ind.Stat. Ann. § 29–5309.[1] The certificate has been filed with the Secretary of the United States Senate.

On November 17, 1970, defendant Roudebush filed in the Superior Court of Marion County, Indiana, a petition for a recount of the votes cast in selected precincts of Marion County, stating in said petition his desire to contest said election. This court knows judicially that similar petitions were filed by him in ten other counties of the State of Indiana. The Superior Court of Marion County overruled a motion to dismiss the petition, and proceeded to appoint the defendants Samuel J. Walker, John R. Hammond, and Duge Butler as a recount commission to recount the votes cast for the office of United States Senator in such selected precincts of Marion County, relying upon the Indiana recount statute, Burns' Ind.Stat.Ann. §§ 29–5401 to 29–5417, the pertinent parts of which are set out below.[2] Said re-

---

1. Section 29–5309. "The secretary of state as soon as he shall receive such certified statements, shall compare and estimate the votes given for United States senator and for representative in congress, and certify to the governor the persons having the highest number of votes as duly elected; and the governor shall give to each of the persons returned to him as aforesaid a certificate of his election, sealed with the seal, "and attested by the secretary of state: Provided, That no return of any county which has come into its hands, and which has been duly authenticated by the clerk of the circuit court thereof, under seal, as hereinbefore provided shall be rejected by said secretary of state, but he shall estimate, aggregate and tabulate, and report to the governor the total number of votes cast in each county for each candidate for state office, supreme judge or other officer to be elected by all the voters of the state, and members of congress, as evidenced by the face of such returns so certified to him."

2. Section 29–5401. "Any candidate for any public office voted upon at any election held within the state of Indiana shall have the right to have the votes cast for the office for which he was a candidate recounted in any voting precinct or precincts in any county or counties, as the case may be, under the conditions and in the manner and with the effect as in this article [§§ 29–5401– 29–5417] provided."
Section 29–5402. "The right of recount provided in this article [§§ 29–5401–29– 5417] shall be available to any candidate for any public office without exception and including specifically, but without limiting the generality of the foregoing, all candidates for any township, town, city, municipal, county, district, judicial, legislative, and state elective office and candidates for membership in the house of representatives and in the senate of the United States; and such right of recount may by any candidate be exercised with respect to one [1] or several or all of the voting precincts in which votes were cast for the office for which he was a candidate."
Section 29–5405. "Each such petition shall state the office and the precinct or precincts within the county in respect of which the petitioner desires a recount; * * * that the petitioner in good faith believes that either through mistake or fraud the votes cast for such office at such election in such precinct or precincts were not correctly counted and returned; that the petitioner desires to contest said election in respect of said office, * * * and that he desires a recount of all of the votes cast for such office in such precinct or precincts. The term 'contest' as used in this section shall include all forms of contest herein or hereafter recognized as appropriate means for contesting title to a public office. * * *"
Section 29–5409. "Upon the filing of such petition and undertaking, the court or the judge thereof in vacation shall, upon the expiration of twenty-five [25] days after such election and upon proof of service of said notice or notices, grant such petition and cross-petition or cross-petitions as may have been filed and order the recount of such votes in such precinct or precincts. * * *"
Section 29–5414. "When such recount is completed by the commission it shall

count was ordered to be commenced on December 8, 1970.

On December 3, 1970, plaintiff Hartke brought this action to enjoin the defendant recount commission from proceeding with the recount in Marion County, and to enjoin the defendant Roudebush generally from taking further action to obtain a recount in the other counties in which his recount petitions were filed. Jurisdiction was predicated on 28 U.S.C. § 1343(3), with request that a three-judge district court be convened to hear the case, pursuant to 28 U.S.C. § 2284. The jurisdiction of a three-judge court over an action in which a candidate for the Congress of the United States alleges the deprivation of a right under color of a state election law, and the unconstitutionality of such law in the light of the Constitution of the United States has been recognized. Voltaggio v. Caputo, D.N.J., 1963, 210 F.Supp. 337, app. dis., 371 U.S. 232, 83 S.Ct. 325, 9 L.Ed. 2d 494. See also Socialist Labor Party v. Rhodes, S.D.Ohio, 1968, 290 F.Supp. 983, aff'd as modified, *sub nom* Williams

v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24. This court was properly convened, and has jurisdiction in the premises.

The Attorney General of Indiana has been permitted to intervene, pursuant to 28 U.S.C. § 2284(2), and has filed a motion to dismiss the action. The defendant Roudebush has likewise moved to dismiss. An argument common to both motions is that this court lacks jurisdiction to grant injunctive relief, as prayed for, because prohibited by 28 U.S.C. § 2283.[3]

■ The statute referred to has been characterized as ambiguous, by the Supreme Court of the United States, speaking without dissent. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267. It is therefore not surprising that various, and to some extent contradictory, interpretations of it have been made. One view, which we find persuasive, is that Section 2283 is not a jurisdictional statute, but is rather, in essence, a statutory adoption of the doctrine of comity and hence discretionary in its application. In spite of its

---

make and sign its certificate showing the total number of votes received in such precinct or precincts by each candidate for such office or offices and state therein who received the highest number of votes in such precinct or precincts for such office or offices and by what plurality, and shall file the same with the clerk of the circuit court. The clerk shall enter such certificate in the order book of such court.

"(Except for the offices of governor, lieutenant-governor, and members of the general assembly,) such recount certificates shall supersede for all purposes all previous returns made in any form of the votes thus recounted; * * * "

Section 29–5415. "If a recount is had in respect to an office for which votes were cast in all voting precincts of the state, (except governor and lieutenant-governor,) or in more than one [1] county, (except members of the general assembly,) the clerk of the circuit court where such recount was had shall determine whether the votes as shown by such recount certificates differ from the votes in such precinct or precincts as the same had been returned to, and tabulated by the county canvassing board, and if he

finds there is such difference he shall make his certificate showing the total vote in such county for such office for each candidate as corrected in accordance with the votes shown by such recount certificate and shall forthwith transmit the same to the secretary of state * * and if the secretary of state shall previously have included in his tabulations votes cast for such office as returned by such county canvassing board he shall correct such tabulation, * * * and the candidate shown by such corrected tabulation to have received the highest number of votes for such office shall be entitled to a certificate of election or commission for such office notwithstanding one may have been issued upon a previous tabulation of the total votes cast for such office."

Note: Portions in ( ) added by 1961 amendment, as discussed *infra*.

3. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

absolute language, it does not prevent a federal court from enjoining state court proceedings where special circumstances justify such relief. Baines v. City of Danville, 4 Cir., 1964, 337 F.2d 579, 593. This appears to be particularly true with respect to cases arising pursuant to 42 U.S.C. § 1983, as to which 28 U.S.C. § 1343, under which this suit is brought, is the jurisdictional analogue. Machesky v. Bizzell, 5 Cir., 1969, 414 F.2d 283; Carmichael v. Allen, N.D.Ga., 1967, 267 F.Supp. 985 (three-judge court); Landry v. Daley, N.D.Ill., 1968, 288 F.Supp. 194, 233. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.

Another ground for dismissal urged by the defendant Roudebush is that this court lacks jurisdiction because exclusive jurisdiction to determine the effect of the recount proceedings commenced by him is in the United States Senate by virtue of Article 1, Section 5 of the Constitution of the United States, which provides "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members. * * *" But a right claimed under the same Constitutional provision—the right to have the returns of the November 3 election judged by the Senate and not piecemeal by various commissions appointed by various state courts—is the very right which plaintiff asserts is being violated by the defendant Roudebush's state court actions. Regardless of the position taken, all parties agree as to the supremacy of the Senate itself to make the final determination as to the winner of the recent election. Reed v. County Commissioners, 277 U.S. 376, 48 S.Ct. 531, 72 L.Ed. 924; Barry v. United States ex rel. Cunningham, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867.

The great weight of authority supports plaintiff's position that court proceedings for recount or contest with regard to an election for representative in the national House of Representatives or for United States Senator are unconstitutional, as in conflict with Article 1, Section 5, whether brought in state or federal court. State ex rel. Fleming v. Crawford, 1891, 28 Fla. 441, 10 So. 118; Burchell v. State Board of Election Commissioners, 1934, 252 Ky. 823, 68 S.W.2d 427; Opinion of the Justices, 1956, 152 Me. 212, 142 A.2d 532; Belknap v. Board of Canvassers, 1893, 94 Mich. 516, 54 N.W. 376; McLeod v. Kelly, 1942, 304 Mich. 120, 7 N.W.2d 240; State ex rel. 25 Voters v. Selvig, 1927, 170 Minn. 406, 212 N.W. 604; Odegard v. Olson, 1963, 264 Minn. 439, 119 N.W.2d 717; State ex rel. McCue v. Blaisdell, 1908, 18 N.D. 55, 118 N.W. 141; Laxalt v. Cannon, 1964, 80 Nev. 588, 397 P.2d 466; Opinion of the Justices, 1921, 80 N.H. 595, 113 A. 293; Smith v. Polk, 1939, 135 Ohio St. 70, 19 N.E.2d 281; Sutherland v. Miller, 1917, 79 W.Va. 796, 91 S.E. 993; State ex rel. Wettengel v. Zimmerman, 1946, 249 Wis. 237, 24 N.W.2d 504; Keogh v. Horner, 1934, S.D.Ill., 8 F.Supp. 933; Peterson v. Sears, et al., 1964, N.D.Iowa, 238 F. Supp. 12.

An equally strong body of authority supports the same rule with regard to the lack of jurisdiction in the courts to countenance suits for recount or contest with regard to elections of members of the State legislatures. The reasoning is identical and is predicated on provisions of the various state constitutions which copy Article 1, Section 5 of the Constitution of the United States either verbatim or in substance. We deem it unnecessary to burden this opinion with a collection of these many cases, inasmuch as the Supreme Court of Indiana has had occasion to speak three times in the past twenty years on the subject of legislative recounts, attempted under the statute here involved, Burns' Ind.Stat.Ann. §§ 29–5401 to 29–5417, inclusive.

This trilogy consists of the cases of State ex rel. Acker, et al. v. Reeves, 1951, 229 Ind. 126, 95 N.E.2d 838; State ex rel. Beaman v. Circuit Court of Pike County, et al., 1951, 229 Ind. 190, 96 N.E.2d 671, and State ex rel. Batchelet v. DeKalb Circuit Court, et al., 1967, 248 Ind. 481, 229 N.E.2d 798. The provision of the Constitution of Indiana which

controlled the cases is Article 4, Section 10, which is virtually identical to Article 1, Section 5 of the Constitution of the United States.[4] In each case, a defeated candidate for the General Assembly of Indiana filed a petition for a recount pursuant to Burns' Ind.Stat.Ann. §§ 29–5401 to 29–5417, in each case the trial court appointed a recount commission, and in each case the Supreme Court of Indiana issued a writ of prohibition restraining the court from proceeding with the recount on the ground that it was constitutionally impermissible in the light of Article 4, Section 10.

In order to understand *Acker, Beaman,* and *Batchelet,* and, for that matter, our own decision, it is necessary to make plain what the unadorned word "recount" has been taken to mean in Indiana. It will be noted immediately that the statute (Footnote 2) does not specify in what manner the recount shall be conducted; however, we find from the undisputed evidence in the case before us, and in addition know judicially, that by custom, usage and practice recounts in Indiana have been conducted under the statute as follows: (1) with regard to votes registered on voting machines, the machines are inspected by the commission, and the totals checked against the tally sheets and certificates of memoranda as to total votes cast for each office; this operation is purely mechanical and/or mathematical and creates no problems; (2) with regard to votes cast by paper ballot, which includes all of the votes cast in some of the counties of the State of Indiana and a part of the votes cast in all counties of the State, the commission exercises its own judgment, sometimes supplemented by instructions from the court which appoints it, as to which ballots are to be counted and which not counted, and thereby, for all purposes, nullifies and supersedes the judgment of the duly constituted election boards in this regard.

Further, the election laws provide that after tallying the vote, each local election board must place in separate envelopes, clearly marked, all of the ballots which it counted, and all of the ballots which it did not count. Such envelopes are then sealed with wax, to preserve their integrity. The commission necessarily breaks the seals and removes the ballots for the purpose of its recount— or rejudging, as would appear to be more accurate—and reassembles them according to its own determinations, which may well be by 2–1 vote in many instances.

There is no way in which the commission may make a simple mathematical verification of the vote. As illustrative of the problems encountered, a ballot may, under certain circumstances, be valid and countable for one office, but not for another. If counted for any office it is placed in the "counted" envelope; but the commission has no way of knowing how the election board counted it—whether for all offices, or only for some. The main problems, of course, arise with respect to the counting of ballots not absolutely perfect on their face. What is a distinguishing mark? What was the intent of the voter? As the record in the many permissible recount cases, too numerous to cite, all reflect, judgments must constantly be made in determining which ballots to count and which not to count when "recounts" are made under the Indiana recount law.

It was in this context, then, that the Supreme Court of Indiana first confronted the constitutional question as to the jurisdiction of the Indiana courts to appoint recount commissions with respect to an election for a seat in the Indiana House of Representatives. The Court quoted Article 4, Section 10, Indiana Constitution and pointed out its similarity to Article 1, Section 5, United States Constitution. It then quoted with approval from Lucas v. McAfee, 1940,

---

4. Article 4, Section 10: "Each House, when assembled, shall * * * judge the elections, qualifications and returns of its own members."

217 Ind. 534, 29 N.E.2d 403, 29 N.E.2d 588, as follows:

" 'The right of legislative bodies to judge the elections, qualifications, and returns of their own members is of ancient origin. The history of the doctrine reveals that it was established in the constitutional law of England in the year of 1586, during the reign of Queen Elizabeth. * *

'Provisions guaranteeing this right are to be found in the federal Constitution and in the organic law of every state in the Union, in language substantially if not identically like that employed in ours. * * * The right is deemed essential to the enactment of legislation without interruption and confusion and to maintain a proper balance of authority where the functions of government are divided between coordinate branches. It is no more subject to judicial interference or control than the judicial functions of this court are subject to the dictates of the legislative or executive departments. The Constitution has defined a domain upon which courts may not tread. Dinan v. Swig, 1916, 223 Mass. 516, 112 N.E. 91.' "

The Court then went on to hold the statute unconstitutional and void to the extent that it purported to apply to members of the General Assembly, and entered its writ of prohibition accordingly.

*Beaman*, like *Acker*, arose out of the general election of 1950, and was considered at about the same time by the same court. Here original suits were brought in two counties to obtain a recount for the office of Joint State Senator and recount commissions were appointed in each county. The judges of the two courts were again prohibited from proceeding with the recounts. On behalf of respondents, as in the case before us, the argument was made that in carrying out the provisions of the recount statute the courts and their commissions were acting simply in a ministerial capacity. The Court pointed out

its recent decision in *Acker*, and held that since the recount statute was unconstitutional as applied to recounts for the legislature, it was, to such extent, void ab initio and inoperative from the time of its passage. Therefore, it reasoned, it could not confer any jurisdiction upon any court either for the performance of judicial or ministerial acts, and hence the appointment of recount commissioners was beyond the lawful jurisdiction of the courts involved.

Also, as here, respondents argued that a recount of votes is not an adjudication of the election or rights to an office but is only a proceeding in discovery. The Supreme Court rejected this theory also, pointing out the provisions of Section 29–5414, *"Such recount certificates shall supersede for all purposes all previous returns * * *"* (Supreme Court's emphasis), and of Section 29–5415, " * * * the candidate shown by such corrected tabulation to have received the highest number of votes for such office shall be entitled to a certificate of election * * * notwithstanding one may have been issued upon a previous tabulation of the total votes cast for such office." The Court concluded from such provisions that if the effect of the statute was not an adjudication of the election and returns of members of the legislature it approached so nearly thereto "that it may interfere with the constitutional right of each house of the Legislature to judge the elections and returns of its members. * * * its effect is more than a mere procedure for the discovery of evidence." Unconstitutionality was reaffirmed.

These decisions put the matter at rest for the next several years. However, in 1961 the General Assembly attempted to bring the law into conformity with the Indiana Constitution with respect to the members of the general assembly and certain other state officers. It did so by inserting the language "Except for the offices of governor, lieutenant-governor, and members of the general assembly" where the same presently appear

**1376**

in Sections 29–5414 and 29–5415 (set out in ( ), Footnote 2), and by adding certain paragraphs to Section 29–5414 to provide that with respect to the general assembly, the results of the recount would be forwarded to the appropriate presiding officer for information only. It will be noted that all of the language found in *Beaman* to constitute a recount "more than a mere procedure for the discovery of evidence" remained untouched as to recounts for the office of United States Senator.

However, the effort to legitimize recounts for the General Assembly failed. In *Batchelet* a recount for State Senator was attempted in the DeKalb Circuit Court under the amended statute, and that Court appointed a recount commission. The recount was immediately halted by a temporary writ of prohibition issued by the Supreme Court of Indiana. The Senate itself then resolved the dispute, as provided by Article 4, Section 10. In thereafter making the temporary writ permanent, instead of simply dismissing the proceeding as moot in light of the seating of Senator Batchelet, the Supreme Court again quoted from *Acker:* "(The) right of legislative bodies to judge the elections, qualifications, and returns of their own members is of ancient origin. It is no more subject to judicial interference or control than the judicial functions of this court are subject to the dictates of the legislative or executive departments. The Constitution has defined a domain upon which courts may not tread." The lower court was held to have no jurisdiction.

■ If, as cannot possibly be denied, it is unconstitutional under Indiana law for an Indiana Circuit or Superior Court to conduct a recount for the office of member of the General Assembly, even after the passage of the abortive 1961 amendments, *a fortiori* it is manifestly repugnant to the Constitution of the United States for such a court to attempt to conduct a recount for the office of United States Senator, as to which office such amendments were not even sought to be applied.

We now return to further discussion of the effect, or lack of effect, of 28 U.S.C. § 2283. At the outset, it will be noted that the section contains three specific exceptions which remove the statutory inhibition in certain circumstances (Footnote 3). Obviously, if the suit at hand falls within one of the exceptions, no further discussion is required. It has been urged in recent cases arising under 42 U.S.C. § 1983 [5] and brought pursuant to 28 U.S.C. § 1343 that Section 1983 itself furnishes a specific exception applicable to Section 2283, in that it specifically authorizes relief by " * * * suit in equity, or other proper proceeding for redress." Indeed, it has been so held. Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119. In *Dombrowski, supra,* the Supreme Court found decision of this question unnecessary to its disposition of the case, and therefore declined to resolve it. It likewise specifically declined to resolve the question in Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182. The proposition therefore remains quite viable.

However, it is true that whether one takes the view of the Third Circuit as expressed in *Cooper* that Section 1983 constitutes a specific exception to Section 2283, or whether one takes the view we have adopted that notwithstanding Section 2283 a state court proceeding may be enjoined where special circumstances justify such relief, it does not follow that equitable relief will automatically be granted. Indeed, in some of the cases relied upon in support of each of the rules as above stated, refining

---

5. Section 1983. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

the scope of Section 2283, injunctive relief was ultimately denied by reason of the application of principles of comity and the abstention doctrine. E. g., Baines v. City of Danville, *supra;* Cooper v. Hutchinson, *supra.*

■ The question involved here is one of federal constitutional law, and the state statute involved is not of an uncertain nature. Neither is the state statute susceptible of a limiting construction, because it has already been construed three times by the Supreme Court of Indiana and thrice held unconstitutional. In such circumstances the abstention doctrine does not apply. Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50; Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174; Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101.

■ Just as the defunct legal posture of the Indiana recount statute makes clear that abstention is not appropriate, the special circumstances disclosed by the facts impel the conclusion that the active interposition of this Court is required. What defendants are threatening to do, and will do if not enjoined, constitutes an interference with the orderly processes of the recent election, and with the Constitutional prerogatives of the United States Senate. The plaintiff, as a candidate for re-election to that body, has a constitutional right to have the election contest, if there is to be one, held before the sole tribunal having jurisdiction in the premises, the Senate itself. It is essential to plaintiff's right that the integrity of the ballots cast at such election be preserved, i. e., that they be held in their original envelopes, with the seals intact, and that the integrity of the tally sheets, voting machines, and other paraphernalia of the election likewise be preserved until such time as they may be called for by the Senate, so that no question may arise as to the character of the evidence which the Senate will be called upon to judge. Plaintiff's rights will be irreparably harmed if such evidence is compromised, for which there can be no adequate remedy at law. The harm to be avoided will take place immediately, if not enjoined. Like Humpty Dumpty, the seals on the ballots cannot be put back together again, if once destroyed, hence the frequent reason given for abstention—that all can be made right through state appellate procedures—does not apply.

We surmise that the defendant's argument here would be less heated if, for example, we had before us, instead of a purported recount commission appointed by the Superior Court of Marion County, a purported recount commission appointed by a Justice of the Peace of Beanblossom Township, Brown County, Indiana, directed by the Justice to open, inspect, and judge anew all of the ballots cast in the whole State for the office of United States Senator. But what would be the difference?

As was said by the Supreme Court of Indiana in *Beaman,* the statute involved was void *ab initio* and conferred no power upon any court to perform either a ministerial or a judicial act thereunder, as to "recounts" for legislative office. Consistently, therefore, there could be no difference at all between the legal standing of the defendant commissioners in this action, and the hypothetical Brown County commissioners. Thus considered, what we are here enjoining is not in any true sense a "proceeding" in a State court, but, more appropriately, a threatened invasion of the sanctity of the ballots by persons acting wholly without legal authority.

The respective motions to dismiss the action are therefore each denied, and a preliminary injunction will issue forthwith, as prayed for by the plaintiff,

upon his giving bond as provided in Rule 65(c), F.R.Civ.P., in the penal sum of $5,000.00.

Dated this 19th day of December, 1970, as of December 17, 1970, at 5:45 P.M., pursuant to the oral announcement of the Court's decision and order at the conclusion of the hearing on the prayer for a preliminary injunction.

STEVENS, Circuit Judge (dissenting).

Regardless of whether or not we agree with the Indiana trial court's construction of Indiana law (and we should not substitute our interpretation of state law for his), we still must decide whether a federal court should enjoin a recount of votes cast for the office of United States Senator pursuant to state election laws. No federal court has ever done so before.

In my opinion the temporary restraining order was improvidently entered on December 3, 1970, and should be vacated. At that time the recount was not scheduled to commence until December 8, 1970. No explanation has been advanced for the failure to seek review in the Indiana Supreme Court, including a stay of the recount if needed to give that Court adequate time to consider all issues, both state and federal, subject to further review, if necessary, by the United States Supreme Court. See United States ex rel. Lawrence v. Woods, 432 F.2d 1072 (7th Cir. 1970). Nor has there been any suggestion that the Indiana judiciary is not perfectly capable of handling Indiana litigation without assistance or interference from a federal district court. I think this court is prohibited from enjoining the recount by the plain language of 28

U.S.C. § 2283, and Supreme Court opinions articulating the policy underlying that statute.[1] Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234; Amalgamated Clothing Workers v. Richmond Bros. Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600.

Plaintiff asserts that an injunction should be granted to protect him from a deprivation of his constitutional right to have the United States Senate act as the sole judge of the Indiana election returns. U. S. Const. Art. I, Section 5. But the proof which he offered does not establish any threatened deprivation of that right. In my opinion the exercise of "judgment" by state election officials at various stages of the counting and recounting of ballots does not invade the Senate's power to make the final judgment on the outcome. The evidence establishes without contradiction that the Indiana recount procedures have integrity, that the original ballots and other records are carefully preserved for future study, that an adequate record of what transpires during a recount is maintained, and that any judgment as to whether or not certain categories of ballots (or even individual ballots) should be counted, may be reviewed subsequently by the body having the power finally to resolve an election contest.

Plaintiff has failed to prove that he would suffer irreparable harm if the recount were permitted to proceed. Indeed, it is entirely possible that the recount would show that a Senate contest would be futile, and thereby avoid a protracted controversy which may now be required. Moreover, as a practical matter, I would assume that the work of the Senate would be facilitated, rather than impaired, by the availability of a fairly conducted recount, in addition to

---

1. I also think it was improper to enter the temporary restraining order without notice five days before the recount was scheduled to commence. In my opin-

ion notice to the opposite party should always be required absent a compelling showing of need and a convincing explanation for the failure to give notice.

the original count, before undertaking its work.[2]

I would vacate the temporary restraining order and dismiss the complaint.

2. We have not been advised about the Senate procedures for resolving election contests. It is of some interest that the House of Representatives "generally follows State law and the rulings of State courts in resolving election contests, * * *" See H.R.Rep. No. 513, 87th Cong., 1st Sess. 42 (1961). It would seem likely that the Senate would also rely on state practice. Indeed, I would expect the recount procedure, in contrast to making the final judgment in a contest, to be treated as part of the "Manner of holding Elections". See U.S.Const. Art. I, Sec. 4.